**TRANSPORT INDEMNITY COMPANY, Appellant,**

v.

**James M. TETER, Carolyn Teter, and John Morris, Respondents.**

**No. KCD 28907.**

Missouri Court of Appeals, Kansas City District.

Nov. 27, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 27, 1978.

Application to Transfer Denied Feb. 13, 1979.

Roy A. Larson, Kansas City, for appellant.

James H. McLarney, Kansas City, for respondents.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

This appeal is from a declaratory judgment which determined that a policy of insurance issued by plaintiff Transport Indemnity Company to Indiana Refrigerator Lines, Inc. affords coverage to defendant John Morris against liability from the operation of tractor-trailer leased by Indiana and driven by Morris.

The declaratory judgment action was tried to the court on a stipulation of the facts, exhibits and testimony of James Teter, seriously injured in the casualty and claimant against Morris for damages.

The evidence shows that on January 14, 1968, an International tractor-trailer driven by Morris overturned on an Iowa highway and caused injury to Teter, then asleep in the cab. The truck was owned by Philp [also, Phelps], a resident of Iowa, who transported freight by motor vehicle under contract to private and common carriers. The tractor-trailer unit was, at the time of

the occurrence, under lease from Philp to Indiana Refrigerator Lines, Inc. to transport a load of beef from Sioux City, Iowa to Bangor, Maine. Indiana Lines was a common carrier of commodities under certificate from the Interstate Commerce Commission. At the time of the casualty Morris was the driver-employee of Philp and received for pay twenty-five percent of the gross sum received by Philp for the use of the unit for a given job. Teter was employed by Morris for the particular trip as a driver-helper to be paid by Morris from the sum received by him from Philp.

Transport Indemnity Company wrote an insurance policy wherein Indiana Refrigerator Lines was a named insured. The policy was in full force and effect on the date of the casualty to Teter. The Teters, husband and wife, brought suit for damages against Morris as defendant. [Teter had made claim and received benefits under the Workmen's Compensation Law of Iowa.] Morris made demand upon Transport Indemnity to assume defense and to pay any judgment returned against him for the Teters. Transport Indemnity thereupon brought this action for a declaratory judgment that Morris was not an insured under the policy issued to Indiana Refrigerator Lines and so was not obligated to defend the action against him or to pay any resultant judgment. Morris, although named and served, made no defense to the declaratory judgment action and does not respond to this appeal.

The circuit court declared and adjudged that Morris was an Insured under the policy so that Transport Indemnity owed him a defense and satisfaction of judgment returned against him for the Teters. The court made this determination of law to rest on the *Exclusions* of the policy terms:

THIS POLICY DOES NOT APPLY

A. To any liability

   .     .     .     .     .

2. for bodily injury . . . of any employee of an insured arising out of or in the course of his employment by any insured, except

a. liability the named insured may have with respect to bodily injury . . of an employee of any insured other than the named insured.

The court adopted this syllogism to declare coverage for Morris under the policy:

Indiana Refrigerator Lines was the Named Insured under the policy.

Philp and Morris were Insureds under the policy at the time and place of the casualty.

Teter was an employee of an Insured [Philp] other than the Named Insured [Indiana Refrigerator Lines].

Teter was not an employee of Morris, the Insured who seeks coverage.

Teter was not an employee of the Named Insured Indiana Refrigerator Lines.

Since the Named Insured, Indiana Refrigerator Lines, may be liable to Teter for injury caused by the negligence of Insured Morris, the provision which excluded coverage to Teter because he was an employee of an Insured does not apply.

The judgment declares, essentially, that because by the terms of the policy Teter could have proceeded against the Named Insured [Indiana Refrigerator Lines] on the liability of the Insured [Morris], he may proceed against the Insured because Teter was not an employee of that Insured. This logic assumes, of course, that Morris was an Insured under the policy language.

The printed policy, however, provides coverage only to the Named Insured and those designated as additional Insureds. The definitions of those terms are given as:

NAMED INSURED—The words "Named Insured" shall mean only the person, firm or organization set forth in Item L of the Declarations.

INSURED—The word "Insured" shall mean the Named Insured and any other person, firm or organization to whom insurance protection has been extended under this policy.

DECLARATIONS Item 1 designates Indiana Refrigerator Lines [and other enterprises, neither Philp nor Morris among them] as Named Insured. A succession of

endorsements extends coverage to numerous truckers as additional Insureds, but not Philp or Morris. Nor does the policy contain an omnibus clause to protect a permissive user of a motor vehicle leased to a Named Insured against liability.

■■ Insurance is a matter of contract and, as with any other consensual undertaking, must be given effect according to the plain terms of agreement. *Automobile Club Inter-Insurance Exchange v. Diebold,* 511 S.W.2d 135, 137[1, 2] (Mo.App.1974). The insuring clauses of the policy show intention that coverage shall extend only to those declared as Named Insured or additional Insured. Philp and Morris were neither declared as persons to whom the policy issued nor were they added by endorsement to cover their personal liability as a special risk. [See, Long, Law of Liability Insurance, § 1.01 (1978); Keeton, Insurance Law, pp. 3 et seq. (1970)]. An insurance company may, within the limits of public policy, undertake agreements to limit or restrict coverage. *Empire Fire and Marine Co. v. Brake,* 472 S.W.2d 18, 21[1] (Mo.App.1971). In this case, Indiana Refrigerator Lines protected against liability to the public from operations as a motor carrier for hire of owned and nonowned vehicles. The effect of the coverage of the policy was to extend coverage to Indiana Refrigerator Lines from the transport activities of Philp and Morris under the lease but, in the absence of special endorsement, to withhold coverage for the personal liability of lessor Philp and his employee-driver Morris. It was an additional risk not undertaken by Transport Indemnity Company nor, as the policy discloses, paid for by Indiana Refrigerator Lines. Transport Indemnity Company owes no indemnity to Philp or driver-employee Morris for any liability adjudged against them for Teter.

The conclusion of law—that Philp and Morris were insureds under the policy at the time of the casualty—upon which the declaration of coverage is premised—finds coverage, not from the insuring clauses of the policy, but from the Exclusions provisions. The trial court entry of judgment makes no mention of the Named Insured and additional Insured definitions which, by clear terms, do not encompass Philp or Morris within the risks undertaken by the insurer. Rather, the court rendered coverage on their behalf by an "ambiguity" discovered in the Exclusions clause which, by the printed word, protects against "liability the *named insured may have* with respect to bodily injury . . . of an employee of any insured other than the named insured," but which, by the construction accorded by the trial court, protects against the liability not only of the Named Insured but also of any additional Insured—namely, Philp and Morris. [Emphasis added.] Whatever may be the validity of recourse to construction of contract terms which, ostensibly, do not admit of misunderstanding, this exercise *assumes* an antecedent status of Insured for Philp and Morris which the Exclusions did not affect. That assumption does not stand.

■■ An Exclusions provision of an insurance policy, by apodictic definition, excludes risk. It has no function to endow coverage but rather limits the obligation of indemnity. Couch on Insurance 2d, § 15.47; *Wellman v. Liberty Mutual Insurance Company,* 496 F.2d 131, 136[1–3] (8th Cir. 1974). Exclusions A(2)(a) [by which the trial court rendered coverage for Philp and Morris] stated as an affirmative proposition rather in the formulistic Exclusions and exception from Exclusions language of the policy, says clearly and simply: that the policy applies to liability *the Named Insured* may have for injury to an employee of an Insured but not to liability for injury to an employee of the Named Insured. Neither these, nor any other term of the policy, nominates, expressly or by a necessary implication, Philp and Morris as an Insured. The terms simply do not extend the protection of the policy to them. Insurance coverage cannot be invented but must be invested by the contract terms. *Graham v. Gardner,* 233 S.W.2d 797, 800[4, 5] (Mo.App. 1950).

It is the argument of Teter on this declaratory judgment appeal that the policy is-

sued by Transport Indemnity to Indiana Refrigerator Lines *imports* coverage of Morris even though he was not designated an Insured by the written policy. He contends that the operations which the policy undertakes to insure determine the coverage intended by the underwriter. In this case [he argues] the movement of commodities throughout thirty states almost entirely by leased vehicle by a common carrier under certificate from the Interstate Commerce Commission augurs intention that the drivers [always furnished by the lessor] were personally insured against public liability and, by analogy, simulates the coverage to a permissive driver by the omnibus clause of a standard insurance policy.

The argument of omnibus coverage by analogy rests on three premises: (1) the Interstate Commerce Commission regulations which require that Indiana Refrigerator Lines be fully responsible for leased vehicles under its direction and control and (2) endorsement eight of the Transport Indemnity policy issued in compliance with the regulations and (3) the requirements of Iowa law [where the casualty occurred]—all formulate a form of omnibus coverage for the benefit of a driver of a vehicle under interstate certificate as was Morris.

The provisions of Part II of the Interstate Commerce Act §§ 201–216 [49 U.S. C.A. §§ 301–316] require the ICC to regulate common carriers by motor vehicle in interstate commerce and empower that agency to promulgate rules on the use by motor carriers of nonowned vehicles. In this exercise, the ICC may adopt [§ 304(e)(2)]

> . . . such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used [under lease or contract] motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles . . . .

In conformance with the regulations adopted under this authority the lease between Indiana Refrigerator Lines and Philp included the agreement that the equipment leased was in the "exclusive possession, control and use of the authorized carrier LESSEE [Indiana] and the LESSEE assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION." To secure compliance with other requirements of the Interstate Commerce Act § 215 [49 U.S.C.A. § 315] and the pertinent regulations of the ICC, endorsement eight issued as part of the policy from Transport Indemnity Company to Indiana Refrigerator Lines whereby the insurer agreed to pay, within the limits of liability

> *any final judgment recovered against the insured* for bodily injury or death of any person . . . (excluding injury to or death of the insured's employees while engaged in the course of their employment . . .) resulting from negligence in the operation, maintenance or use of motor vehicles under a certificate of public convenience and necessity or permit issued to the insured by the Interstate Commerce Commission . . . regardless of whether such motor vehicles are specially described in the policy or not. [Emphasis added.]

Teter contends that the ICC regulations and the compliances given them by Indiana Refrigerator Lines by the terms of the lease and of endorsement eight import into the policy of insurance coverage against the personal liability to the public of the driver of a vehicle leased by a motor carrier. The respondents come to this conclusion on the principle—in the language of the brief—that "where coverage of certain persons is required by statute, a court must read into the policy the statutory omnibus clause covering such persons." The fallacy of this argument is evident: the Interstate Commerce Act and regulations require only that the *motor carrier* under certificate [the *insured* in the terms of endorsement eight] shall be fully responsible for the operation of the nonowned motor vehicle. The purpose of § 315 [U.S.C.A.] of the Interstate

Commerce Act [and of endorsement eight which copies the text of that enactment] is to protect the public against injury or death from the negligent operation of motor vehicles [owned or nonowned] used by a common carrier under certificate from the ICC. That purpose is fully served by a policy of insurance which insures *the carrier* against claims of negligent injury or death from its motor vehicle operations. *Transport Indemnity Co. v. Rollins Leasing Corp.,* 14 Wash.App. 360, 541 P.2d 1226 (1975). The coverage of the driver is extraneous to this essential purpose.

The cognate provision of § 304 [U.S.C.A.] of the Interstate Commerce Act—that the common carrier under ICC certificate shall have full control and responsibility for the operation of a leased motor vehicle—corrects the historical abuse whereby the carrier engaged an owner of equipment as an independent contractor to transport cargo and thus enabled the carrier to evade, among other responsibility, liability to the public for injury from the negligence of the contractor. *Duke v. Thomas,* 343 S.W.2d 656, 658 (Mo.App.1961). The intention of § 304, found by our Supreme Court in *Brannaker v. Transamerican Freight Lines, Inc.,* 428 S.W.2d 524 (Mo.1968), l.c. 529, was

> to put the use and operation of leased vehicles on a parity with equipment owned by the authorized carrier and operated by its own employees.

■ In terms of the requirement of § 315 [U.S.C.A.] that a motor carrier secure the public against injury from the negligent operation of motor vehicles used under ICC license, § 304 denies a carrier the defense of independent contractor [*Duke v. Thomas, supra,* l.c. 659], renders the driver a statutory employee of the carrier [*Brannaker v. Transamerican Freight Lines, Inc., supra,* l.c. 535] and, on principles of vicarious liability, the carrier liable as a matter of law for the negligence of the driver of a vehicle— owned or nonowned—operated under the certificate of the carrier. *Proctor v. Coloni-*

*al Refrigerated Transportation, Inc.,* 494 F.2d 89, 92 (4th Cir. 1974); *Walter v. Dunlap,* 250 F.Supp. 76, 80[3] (D.C.Pa.1966), aff'd, 368 F.2d 118 (3d Cir. 1966). These provisions of law direct only that *a motor carrier* answer to the public for negligent injury caused by a vehicle which displays the carrier ICC decal and permit; they express no public policy that a motor carrier provide against the liability of a driver of a nonowned vehicle nor that such an undertaking—in the absence of insurance contract provision—be deemed adopted into the terms of the coverage. *Wellman v. Liberty Mutual Insurance Company,* 496 F.2d 131, 138 et seq. (8th Cir. 1974). Nor does endorsement eight to the Indiana Refrigerator Lines policy whereby Transport Indemnity Company agrees to pay "any final judgment against the insured" [in the terms of the endorsement, the carrier under ICC certificate]—written to comply with the express language of § 315 that a carrier under permit shall insure against "any final judgment recovered against such motor carrier for bodily injuries to or the death of any person" as result of the negligent use of a motor vehicle under the certificate— confer an omnibus coverage or extend the protection of the insurance contract beyond the carrier by any rule of implication. *National Mutual Ins. Co. v. Liberty Mutual Ins. Co.,* 196 F.2d 597, 599[4–5] (D.C.App. 1952). Insurance coverage does not arise by simulation or analogy, but from agreement. Omnibus coverage for motor carriers is also a matter of contract; in this instance, an agreement undertaken neither by the carrier or insurer. *National Mutual Ins. Co. v. Liberty Mutual Ins. Co., supra,* l.c. 599[4].

■ Teter concludes his contention of omnibus coverage by implication of policy language, analogy, and import of statute, by reference to the laws of Iowa where the casualty occurred. Section 325.26 of the Iowa Code Annotated[1] provides that no certificate shall issue to a motor vehicle carrier until an approved insurance policy

---

1. The statutory references are to the Iowa Code Annotated in effect at the date of the casualty, January 14, 1968.

be filed to protect the public from "the operation of such motor carrier and for which such motor carrier would be legally liable." The laws of Iowa provide also [Chapter 321A]—as do the laws of Missouri [Chapter 303, RSMo 1969]—that a motorist make proof of financial responsibility for damages caused from the ownership or use of a motor vehicle. The proof of financial responsibility contemplated by the Iowa law is by certificate of motor vehicle liability policy which [§ 321A.21(2)(b)]

> [s]hall insure the person named therein and *any other person, as insured, using any such motor vehicle . . . with the express or implied permission of such named insured . . . .* [Emphasis added.]

Teter contends that the rescripted subsection renders omnibus coverage into every insurance policy for a motor vehicle issued in Iowa, a certificated motor vehicle carrier included, on the principle [*Ward v. Allstate Insurance Company,* 514 S.W.2d 576, 578[1] (Mo.banc 1974) and *Benzer v. Iowa Mutual Tornado Insurance Ass'n,* 216 N.W.2d 385, 388[2] (Iowa 1974)] that a statute in force at the time of formulation of contract enters integrally into the contract. That rule, however, integrates only those statutes which are "pertinent and applicable" to the contract. *Ward v. Allstate Insurance Company, supra,* l.c. 578[1].

The financial responsibility law of Iowa [Chapter 321A] does not bear on the law of Iowa which governs motor vehicle carriers [Chapter 325] nor, particularly, on the requirement of § 325.26 that the carrier display an approved liability insurance policy before certificate to operate shall issue.

The financial responsibility law of Iowa, as does Missouri counterpart Chapter 303, provides only that *after* an accident which has caused injury or damage the privilege to drive becomes suspended until the owner or operator of the vehicle makes proof of financial responsibility as prescribed by Chapter 321A of the Code. This enactment has been construed by the courts of Iowa [as has the counterpart been construed by the courts of Missouri] not as a requirement for compulsory motor vehicle liability insurance coverage but only to operate in future to remove the suspension of license imposed on account of a prior accident. *Western Casualty & Surety Company v. General Casualty Company of Wisconsin,* 200 N.W.2d 892 (Iowa 1972), l.c. 893 gives this rationale for the financial responsibility law of Iowa [Chapter 321A]:

> [S]uch laws apply only to a second accident and not to a first accident; . . . *there is no requirement that the owner or operator of a motor vehicle carry a policy of liability insurance or that it contain any particular provisions* unless and until the safety responsibility law has been invoked by the occurrence of some event resulting in the order of a state official that security be deposited or that proof of financial responsibility be made; that *the policy must be a "required" policy before the provisions of the safety responsibility law are to be incorporated therein.* [Emphasis added.]

The motor vehicle liability policy prescribed by § 321A.21(2)(b) which Teter would read into the Transport Indemnity Company policy, therefore, merely certifies proof of *future* financial responsibility and can impose no requirement for omnibus coverage in the absence of an official order for deposit for security for injury already done. The financial responsibility law does not void provisions of a voluntary contract of insurance, and as that issued by Transport Indemnity to Indiana Refrigerator Lines, neither required nor certified under that law. The financial responsibility law was neither "pertinent [nor] applicable" to the insurance undertaking between them and so was not imported into that agreement. *Ward v. Allstate Insurance Company, supra,* l.c. 578[1]. The law of Missouri fully accords with, and adopts, the Iowa statement of rationale and function of the financial responsibility law—textually identical in both enactments. *Perkins v. Perkins,* 284 S.W.2d 603, 609[7] (Mo.App.1955); *Empire Fire and Marine Insurance Co. v. Brake, supra,* l.c. 23[4].

Nor do the terms of the Iowa motor carrier law, even without other reference, impose obligation for coverage of the personal liability of the permissive user of a vehicle, owned or nonowned, of the carrier. The liability bond to be carried by the carrier under § 325.26 of the Iowa Code before certificate will issue insures against injury to the public which results only "from the operation of such motor carrier and *for which such motor carrier would be legally liable.*" [Emphasis added.] "The purpose of the bond is to hold the insurance liability company for the very thing the motor carrier is liable for, and nothing else . . . [T]he bond is required under the statute as a protection to the public for the damages *recoverable against the motor carrier.* It is an insurance of the motor carrier's *liability* . . . It is properly designated by the statute as 'a liability insurance bond.' What liability does it insure? It can only be intended to insure the liability of its principal, the motor carrier." *Crozier v. Hawkeye Stages,* 209 Iowa 313, 228 N.W. 320, 324[9, 10] (1929). In the absence of voluntary agreement between an insurer and insured to extend coverage, that law imposes no condition that the personal liability of a driver shall be secured, but only that the public shall be protected against injury from the want of proper care by the motor carrier.

We determine that the judgment of the trial court that Philp and Morris were Insureds under the policy issued by Transport Indemnity Company to Indiana Refrigerator Lines and that Transport Indemnity Company owes a defense to Morris in the suit for damages brought by the Teters and is liable for any judgment returned in that action is erroneous as a matter of law and is reversed. *Murphy v. Carron,* 536 S.W.2d 30

(Mo.banc 1976); Rule 73.01. The only liability owed the Teters under the policy was that which accrued against Indiana Refrigerator Lines as Named Insureds.[2] Their action against Morris is beyond the scope of the liability of the policy.

The parties brief and earnestly argue numerous other points, all of them now irrelevant to decision.

The judgment is reversed.

All concur.

2. The liability of Indiana Refrigerator Lines, under the theory asserted in the trial court, rests on two premises: first—that Morris was an Insured under the policy and second—that Teter was not an employee of Morris. The second assumption is necessary to coverage because Exclusions A(2)(a) renders the policy inapplicable to liability the Named Insured may have to an employee of an Insured. We have concluded that Morris was not an Insured under the policy and so the second premise is precluded. The second assumption that Teter was not an employee of Morris, however, is not without difficulty since that finding by the trial court was in the face of an apparently contrary stipulation of fact [No. 8] that Teter was employed by Morris to make the trip as a driver-helper for 25% of the payment Morris received from Philp.