RISS INTERNATIONAL CORPORA-
TION, Plaintiff-Appellant,

v.

SULLIVAN LINES, INC., Defendant,

and

Reliance Insurance Company,
Inc., Respondent.

No. WD 35183.

Missouri Court of Appeals,
Western District.

Nov. 6, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled
and Denied Dec. 26, 1984.

Application to Transfer Denied
Feb. 26, 1985.

34 ■

Rodger J. Walsh, Kansas City, for plaintiff-appellant.

Arthur C. Popham, Jr., Kansas City, for respondent.

Before TURNAGE, C.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This civil proceeding originated as an action to recover upon an indemnity agreement. Judgment by default was entered upon the indemnity action. The judgment was for $25,213.81. Subsequently, a garnishment proceeding was filed, which resulted in a judgment for the garnishee. This appeal followed. Judgment affirmed.

Two points are presented, which in summary charge that the trial court erred in (1) entering judgment for the garnishee because the policy of insurance covered the appellant as lessor pursuant to the indemnity agreement, and (2) striking appellant's prayer for damages for vexatious delay and attorney's fees.[1]

The record reveals the following facts.

On April 2, 1976, appellant Riss International Corporation (hereinafter Riss) entered into a contract with defendant Sullivan Lines Inc. (hereinafter Sullivan). This contract is identified and referred to as a Trip Lease and bore lease number 72101 [2].

1. It will be noted that due to the disposition under appellant's point (1), point (2) is neither reached nor ruled.

2. A "trip lease" is defined as a lease in which an *authorized carrier* acquires the use of equipment, with or without a driver, from an *owner* for a period of time less than 30 days. 49 C.F.R. § 1057.2(g).

This trip lease provided that Riss would lease a truck from Sullivan so in turn Riss could transport copper coils from New York to Oklahoma for the Phelps Dodge Company. The trip lease contained an indemnity agreement wherein Sullivan was to indemnify Riss for any claims or losses. The details surrounding the loss are not material to the appeal as it suffices to state that the cargo was lost. On or about April 3, 1976, Riss paid Phelps Dodge Company the sum of $25,213.81, the amount of the loss.

Subsequently, Riss filed suit against Sullivan for recovery of the $25,213.81 under the indemnity agreement. Sullivan defaulted and judgment for the $25,213.81 was entered for Riss.

Respondent, Reliance Insurance Company, Inc. (hereinafter Reliance), the insurance carrier for Sullivan, was summoned as garnishee. It was determined that Sullivan could and would not satisfy the judgment. On June 9, 1983, the trial court entered judgment for Reliance. This appeal followed.

The trial court had before it (as does this court) the indemnity agreement, the insurance policy, and supporting documents, along with the interrogatories and answers by the garnishee, Reliance. In addition, the record is replete with motions and suggestions to strike and for and in support of summary judgment. These documents have been given close scrutiny by this court.

The disposition of this appeal, for the main part, rests upon the liability, if any, to Reliance by virtue of its insurance policy covering Sullivan. Riss bases its claim against Reliance upon the indemnity agreement. This court, however, is not asked to rule on the validity of the indemnity agreement. The entire appeal rests upon the determination of whether there is insurance coverage in light of the existence of the indemnity agreement.

A review of the Reliance policy does not discern that any *contractual* liability of Sullivan (such as the indemnity agreement) that Sullivan might undertake with other carriers to lease Sullivan vehicles are covered by the insurance policy. The mere fact that Sullivan was, at the time the "trip lease" was entered into, a common carrier does not mean that when Sullivan was acting as a lessor that the Reliance policy covering Sullivan's acts as a common carrier would apply. The language of the Reliance policy must be given its ordinary meaning unless from all the circumstances good reason appears to do otherwise. *Wellman v. Liberty Mutual Insurance Co.*, 496 F.2d 131, 138 (8th Cir.1974). This result must be achieved because insurance is a matter of contract, and it must be given effect according to the plain terms of the agreement. *Transport Indemnity Co. v. Teter*, 575 S.W.2d 780, 784 (Mo.App. 1978). In a case similar to the instant proceedings, it has been said:

> The district court noted that Schwartz' liability 'rested solely upon' the Master Interchange Agreement and that 'Continental's obligation to indemnify Schwartz was limited to liabilities of Schwartz arising because of its status as a common carrier or because of its issuance of bills of lading or shipping receipts ...' The court concluded that *'[i]t [could] not be supposed that simply because Schwartz was a common carrier it expected to obtain or Continental intended to provide indemnification against any contractual liability with respect to damaged goods which Schwartz saw fit to assume as an incident to its transportation services ...* Schwartz' claim against Continental was beyond the coverage of the policy.' *Aetna Insurance Co. v. Newton*, 456 F.2d 655, 657–58 (3rd Cir.1972). (emphasis added)

The pertinent and thus controlling portion of the Reliance policy reads as follows: "3. This policy covers on shipments of lawful goods for which the insured may be legally liable as a carrier ..."

In spite of the foregoing clear, plain, and concise limitation of coverage, Riss asserts that because Sullivan at times operated as a carrier authorized by the Interstate Commerce Commission (hereinafter I.C.C.) and

because Sullivan filed the Reliance policy to cover its carrier operations, Sullivan was covered in its capacity as lessor of its equipment as well. The I.C.C. has specifically addressed this question in Chapter X of its Rules and Regulations. The following is to be found:

*"Question 6:*

*Answer:* ... when a vehicle is so trip leased, it is not, for the duration of such lease, being used in the authorized service of the lessor."

It may be readily observed that by the terms of the insurance policy, Reliance intended to provide coverage to Sullivan in the latter's capacity as a *carrier* and not as a *lessor*. Reliance could, within the limits of *public policy,* enter into contractual agreements which limit or restrict insurance coverage. *Teter, supra* at 784.

■ There is no reason to expand or extend the coverage of insurance beyond the expressed limits of the policy issued by Reliance. Coverage must arise and vest from the terms of the insurance contract and cannot be invented or created through some imaginative suggestion of coverage. Reliance asserts, and this court agrees, that while the Sullivan equipment was leased for use to Riss under Riss's carrier certificate, that equipment was not being used in the business of Sullivan as a lessor of that equipment. Thus, under the attending facts and circumstances, when a carrier is acting as a *lessor* and not as a *carrier,* insurance coverage relative to the liability as a *carrier* does not apply unless, because of the terms of the insurance contract, the *insurer* and the *insured* have otherwise contracted for coverage to the *insured* as a *lessor* and the terms of the insurance contract establish such an agreement. For a case which specifically ruled that a lessor who furnishes the driver to the lessee operating under the lessee's bill of lading to a shipper is not liable to that shipper for a loss because the lessor was not acting as a common carrier, see *Virginia Tobacco Co. v. Wilson,* 169 F.2d 652 (4th Cir.1948).

■ .The further assertion by Riss that "trip leases" can only be made between two carriers, making Sullivan a carrier and thus establishing liability against Reliance under the latter's policy, is disposed of by mere reference to the definition of a "trip lease" set forth in footnote one of this opinion. By the above definition, under the "trip lease", Riss became and was the *lessee* and the *authorized carrier,* while Sullivan was cast in the role as *lessor* and *owner.* While it is true throughout this entire matter that Sullivan remained in the transportation business and thus would or could be referred to as a "carrier" concerning the particular relationship between Sullivan and Riss arising from the "trip lease", Sullivan was not a *carrier,* either within the terms of the "trip lease" or the Reliance policy, but was, during and for the purposes of the "trip lease," a *lessor* and *owner.*

From the above, it has been established that the Reliance policy afforded coverage to Sullivan only as to acts committed by Sullivan in Sullivan's capacity as a *carrier.* Since both Riss and Sullivan were regulated by the I.C.C., did any of the regulations of the I.C.C. require a different result concerning coverage and thus render Reliance liable under the present set of facts?

In *Wellman,* the court acknowledged that I.C.C. regulations require that a motor carrier *operating leased equipment* be held liable to the public for the negligent operation of the leased equipment. In the instant case, the lessee, of course, was Riss. In *Wellman,* however, the court refused to read the I.C.C. regulations into an insurance policy so as to impose liability upon the insurer of the motor carrier (as lessor) in contravention of the precise and express terms of the insurance contract. In so holding, the court at 139 declared:

"We do not think that such broad coverage could reasonably have been contemplated by the parties when they formed their insurance contract. Nor should we make the unwarranted assumption that the insurer and the insured somehow intended the apparent and obvious meaning of the endorsement to be inoperative and to be controlled instead by an I.C.C.

regulation which in no way relates to or binds insurance companies."

One purpose, and perhaps it can be concluded the most important purpose, of extended regulation of motor carriage of freight in interstate commerce is to protect persons who are injured in roadway accidents, as well as to protect against loss or damage to other persons' property. 49 C.F.R. § 1043.1 (1983). Motor carriers are obligated to secure the general public against injury arising or resulting from the negligent operation of motor vehicles used under an I.C.C. license. Such a purpose is fully served by insurance coverage which insures the carrier against claims of negligent injury or death. *Johnson v. Pacific Intermountain Express Co.*, 662 S.W.2d 237, 243 (Mo.1983).

Even with the existence of rules and regulations imposed by the I.C.C., it has been noted that the federal policy of assuring compensation for loss by the public *does not* prevent courts from examining the manner in which private agreements or state laws would otherwise allocate the ultimate financial burden occasioned by the injury. *Carolina Casualty Insurance Company v. Insurance Company of North America*, 595 F.2d 128 (3rd Cir. 1979). In addition, a court may give effect to otherwise existing allocations of financial responsibility where the goal of protecting the injured public has already been met. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), *Great West Casualty Co. v. Mallinger Truck Line, Inc.*, 640 S.W.2d 479 (Mo.App. 1982).

Under the facts of the instant case, it is shown that Reliance insured Sullivan for the acts of the latter *as a carrier* as required by the I.C.C. That is so found by this court. Such a finding does not violate the prevailing general rule that the lessee (Riss herein) of equipment is acting as the *carrier* in a trip lease agreement and the *lessee* is primarily liable to the public.

As was further held in *Transamerican*, an indemnity agreement in a contract between a lessee and lessor is not contrary to the regulations of the I.C.C. 49 C.F.R. § 1057.3(a) (1975).

The instant case was initiated by Riss as lessee and against Sullivan as lessor on the indemnity agreement, which resulted in judgment for Riss. As noted above, the validity of that agreement is not before this court, nor has this court been asked to rule upon the validity of the indemnity agreement.

The purpose of the I.C.C. regulations (payment of the loss) has been met because Phelps Dodge Company has already been compensated for its loss. Further, as noted above, the insurance contract between Reliance and Sullivan specifically *did not* provide coverage to Sullivan for contracts (the trip lease inclusive of the indemnity agreement) between Sullivan and other carriers. It might also be observed that if the Reliance policy provided automatic coverage (and it did not) for the contracts of Sullivan, then there would have been no need for the indemnity agreement between Riss and Sullivan. There is nothing to be found within the rules and regulations of the I.C.C. which, under the particular facts and circumstances of the instant case, would impose upon Reliance the coverage of Riss as to this loss, even by way of garnishment upon the Riss judgment gained against Sullivan. Stated another way, under the particular facts and circumstances herein, Riss is left to collect its judgment under the indemnity agreement as against Sullivan. Reliance was not properly summoned as a garnishee.

The trial court did not err in its entry of judgment for Reliance.

As noted above, because of the disposition of point (1), it is not necessary for this court to take up or to rule point (2) presented herein by Riss.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.