Jenny WEST d/b/a West
Loft, Plaintiff,

v.

Leon JACOBS d/b/a Jacobs
Enterprises, Appellant,

v.

MARYLAND CASUALTY
COMPANY, Respondent.

No. WD 42536.

Missouri Court of Appeals,
Western District.

April 17, 1990.

As Modified July 3, 1990.

Robert A. Sundblad, Kansas City, for appellant Leon Jacobs.

Larry J. Tyrl of James, Millert, Houdek, Tyrl & Sommers, Kansas City, for respondent Maryland Cas. Co.

Before MANFORD, P.J., and KENNEDY and ULRICH, JJ.

MANFORD, Presiding Judge.

Direct appeal from a summary judgment premised upon no duty of respondent to defend appellant under the terms of an insurance contract. The judgment is affirmed.

Appellant, Leon Jacobs, who was the defendant/third party plaintiff at the trial court level, appeals from a judgment of the trial court sustaining third party defen-

dant, Maryland Casualty Company's motion for summary judgment. The court determined that third party defendant has no duty to defend defendant/third party plaintiff in a suit against him.

The underlying lawsuit involves action for breach of two contracts entered between the plaintiff, Jenny West, and the appellant, Leon Jacobs. Jacobs was the owner of 103 Square Shopping Center, located in Kansas City, Missouri. Jenny West, who owned and operated West Loft, a hair styling salon located in the shopping center, was his tenant.

On June 8, 1984, the premises leased by West were damaged as a result of a flood. West alleged in Count I of her First Amended Petition that she and the appellant had entered into an oral agreement whereby West agreed to repair and rebuild the damaged premises and the appellant would abate West's monthly rent for a sufficient period of time so that the amount abated equalled the cost of labor and material incurred by West. West alleged that appellant breached this oral contract and, as a result, she was damaged by the breach. Count III of West's First Amended Petition alleged breach of the lease agreement wherein the defendant agreed to maintain and keep in good repair the roof of the leased premises. West alleged that defendant's failure to repair the roof resulted in monetary damages. These are the only counts of the First Amended Petition brought before this Court on appeal.

After commencement of the action by West against appellant, appellant filed his third-party petition against respondent, through which he sought indemnification and alleged that respondent's refusal to provide a defense was vexatious, without reasonable cause, and he was therefore entitled to recover damages under § 375.420, RSMo 1986. Respondent filed a Motion for Summary Judgment on the basis that the insurance policy did not provide insurance coverage for the breaches of contract alleged by West against appellant nor any damages resulting therefrom. Respondent further contended in his motion that because coverage was not provided by

the policy, it had no duty to defend appellant in his pending lawsuit.

The trial judge entered his order sustaining respondent's Motion for Summary Judgment. The underlying case was later dismissed after a settlement was reached, rendering the order of summary judgment a final appealable order. This appeal followed.

The first point appellant argues on appeal is that the trial court erred in granting summary judgment to respondent because respondent's contract of insurance with appellant affords insurance coverage to appellant as a matter of law for damages arising out of breach of contract. Appellant contends that the oral contract to abate rent and the lease contract were incidental contracts as defined by the insurance policy and thus, there was coverage under the policy.

■ "An insurance policy is a contract and, as with any other contract, must be given effect by the plain terms of its agreement." *Holland Corp., Inc. v. Maryland Casualty Co.*, 775 S.W.2d 531 at 533 (Mo. App.1989), *citing Transport Indemnity Co. v. Teter*, 575 S.W.2d 780 at 784 (Mo. App.1978). Terms of an insurance policy are to be interpreted in accordance with the ordinary meaning of the language used. *Holland, supra* at 533. Language is ambiguous only if it is reasonably open to different construction. *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695 at 696 (Mo. banc 1982). The term "ambiguous" generally means reasonably and fairly open to different constructions. *First National Bank of Malden v. Farmers New World Life Ins. Co.*, 455 S.W.2d 517 at 522 (Mo.App.1970). "Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." *Holland, supra, quoting Harrison v. M.F.A. Mut. Ins. Co.*, 607 S.W.2d 137 at 142 (Mo. banc 1980). Further, a court must not use its "inventive powers for the purpose of creating an ambiguity where none exists." *Holland, supra, quoting State Farm Mut.*

*Auto. Ins. Co. v. Ward*, 340 S.W.2d 635 at 639 (Mo.1960).

■ "[A]n insurance contract reasonably susceptible of any interpretation favorable to the insured will be so construed." *Holland, supra, quoting Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490 at 495 (Mo. banc 1983). This does not mean, however, that ambiguities will be created where none exist. *Holland, supra.* Keeping these principles of construction firmly in mind, an examination of the insurance contract and the language contained therein is in order.

Maryland issued a special multi-peril general liability policy and an extension of that policy which is referred to as the "Broad Form Comprehensive General Liability Endorsement."

■ By definition, the liability portion of the insurance is activated in the event of an "occurrence" which is defined by the policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The term "accident" is to be defined by its common meaning, which is:

An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident. *Murphy v. Western and Southern Life Ins. Co.*, 262 S.W.2d 340 at 342 (Mo.App. 1953); *Lindemann v. General American Life Ins. Co.*, 485 S.W.2d 477 at 479 (Mo. App.1972). "Bodily injury" is defined by the policy as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."

Property damage means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss thereof at any time resulting therefrom, or (2) loss of use of

tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

In light of the foregoing definitions, a breach of contract to abate rent or breach of the lease agreement in no way falls under the definition of occurrence. Thus, there is no insurance coverage afforded respondent under the liability portion of the insurance contract.

 Appellant further argues that he is afforded coverage under the "Broad Form Comprehensive General Liability Endorsement" by stating that these contracts he entered into were incidental contracts as defined by this portion of the policy. To ascertain whether or not these contracts are incidental contracts under this portion of the policy, one must first turn to the definition of incidental contract as defined in the general liability portion of the policy.

"Incidental contract" is defined as "[A]ny written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement."

As used in the insurance policy, the term "incidental contract" appears only in the section titled "Comprehensive General Liability Insurance Coverage Part", and, more specifically in Exclusion (a), which states, in pertinent part:

"This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract ..."

An exclusion in an insurance contract does not create coverage but rather it subtracts, limits or denies coverage. *Transport Indemnity Co. v. Teter, supra,* at 784. Thus, Exclusion (a) does not provide general liability insurance coverage for any liability assumed by the insured under any contract or agreement except an incidental contract as defined in the policy. Even though an insured may have entered into a contract which assumes liability, more commonly known as an indemnification or hold harmless agreement, unless it is contained in an incidental contract as defined by the policy, there is no coverage.

The "Broad Form Comprehensive General Liability Endorsement" expands the definition of incidental contract under the general liability portion of the contract as follows:

"(A) The definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured's business."

The expanded definition must be read with the aforementioned Exclusion (a) to understand its meaning under the contract. The above expanded definition of incidental contract is not given effect *unless liability has been assumed by the insured.*

Appellant contends that the only requirement for coverage under the expanded definition of an incidental contract is that the contract must be related to the insured's business. Paragraph IB of the contractual liability coverage which immediately follows the expanded definition of an incidental contract states:

(B) The insurance afforded with respect to liability assumed under an incidental contract is subject to the following additional exclusions:

(1) to bodily injury or property damage for which the insured has assumed liability under any incidental contract, if such injury or damage occurred prior to the execution of the incidental contract;

(2) if the insured is an architect, engineer or surveyor, to bodily injury or property damage arising out of the rendering of or the failure to render professional services by such insured, including

(a) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

(b) supervisory, inspection or engineering services;

(3) if the indemnitee of the insured is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of

(a) the preparation or approval of or the failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or

(b) the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the bodily injury or property damage;

(4) to any obligation for which the insured may be held liable in an action on a contract by a third party beneficiary for bodily injury or property damage arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person engaged in the project;

(5) to bodily injury or property damage arising out of construction or demolition operations, within 50 feet of any railroad property, and affecting any railroad bridge or trestle, tracks, road beds, tunnel underpass or crossing; but this exclusion does not apply to sidetrack agreements.

The above provisions, coupled with Exclusion (a), make it clear that the subject matter of any incidental contract has to be the assumption of liability. The trial court found that no incidental contract existed due to the fact that no liability was assumed by either the oral contract or the lease provision providing for maintenance and repair of the roof. The trial court further gave examples of contractual assumption of liability including; (1) when one agrees to indemnify another for the consequences of his own acts or (2) where one warrants a product or the effectiveness of work done. In this sense, the appellant assumed no liability in the lease nor in the contract to abate rent. This insurance policy does not cover damages arising from these types of breaches of contract. Coverage provided by this policy does not include the type of contracts the plaintiff and appellant entered into as they are not incidental contracts as defined by the policy.

Appellant erroneously relies on *Holland Corp. Inc. v. Maryland Casualty Co., supra,* for the proposition that if appellant's contracts were related to appellant's business, then they are incidental contracts. The *Holland* case is only of precedential value to this case for its discussion of general insurance contract construction. *Holland* does not reach the crucial question of whether liability was assumed under the contract. The Court wrote: "[e]ven if an incidental contract existed, the question of whether liability was assumed in that contract is still open." *Holland* at 534.

In the instant case, however, liability was clearly not assumed. Appellant and respondent had no contractual agreement in which appellant assumes any liability for the respondent. Thus, since no liability was assumed by the appellant in the contracts entered into between the respondent and himself, coverage must be denied and respondent was under no obligation to defend appellant in his impending lawsuit.

■ Further, appellant argues that the trial court erred in granting summary judgment to the respondent because respondent failed to meet its burden of proving it was entitled to summary judgment by unassailable proof. When reviewing a ruling on a motion for summary judgment, an appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed, and accord to that party all reasonable inferences which may be drawn from the evidence. *Gast v. Ebert,* 739 S.W.2d 545 at 546 (Mo. banc 1987). Summary judgment is a drastic remedy and is inappropriate unless the prevailing party has shown by unassailable proof that he is entitled to judgment as a matter of law. *Gast, supra,* citing *Pitman Manufacturing Company v. Centropolis Transfer Company,* 461 S.W.2d 866 at 872 (Mo.1971); *Elliott v. Harris,* 423 S.W.2d 831 at 835 (Mo. banc 1968); Rule 74.04(h). The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue

of fact. *Gast, supra,* citing *Brooks v. Cooksey,* 427 S.W.2d 498 at 500 (Mo.1968). Unless there is a genuine issue of material fact, summary judgment is appropriate and it is not to be denied if the only facts alleged to be in dispute are the differing opinions of the parties as to the legal effect of an ascertained state of facts. *66 Terminal, Inc. v. Roberts,* 448 S.W.2d 938 at 939 (Mo.App.1969). Whether or not language in a contract is ambiguous is a question of law to be decided by the trial court. *Harris v. Union Electric Co.,* 622 S.W.2d 239, 247 (Mo.App.1981). Where there is no ambiguity in the contract, it is the responsibility of the trial court to state its meaning. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261 at 264 (Mo.1973). Summary judgment is appropriate when the contract is clear and unambiguous in its construction. *Adzick v. Chulick,* 512 S.W.2d 194 at 197 (Mo.App.1974).

Review indicates that there were no genuine issues of fact left to be decided between appellant and respondent. The insurance policy clearly denied coverage for breach of the oral contract to abate rent and breach of the lease agreement to maintain and keep the roof in good repair. An insurance company has no duty to defend a lawsuit against its insured if there is no coverage under the insurance policy. Thus, the trial court was correct in granting the order for summary judgment to respondent.

The judgment is in all respects affirmed.

All concur.