**CENTRAL TRANSPORT, INC.,**
**Defendant/Respondent,**

v.

**Benjamin BLAKE, Plaintiff/Appellant.**

**No. 74095.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 10, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 22, 1999.

---

Mary Bruntrager Schroeder, Bruntrager & Billings, P.C., St. Louis, for appellant.

Donald L. James, James B. James, Brown & James, P.C., St. Louis, for respondent.

SIMON, Presiding Judge.

Benjamin Blake (Blake), plaintiff, appeals from a judgment in the Circuit Court of the City of St. Louis, granting Central Transport Inc.'s (Central) motion for summary judgment.

On appeal, he contends that the trial court erred in granting Central's motion for summary judgment based on the finding that Central was not required to have insurance pursuant to section 303.350 RSMo 1994 (all references hereinafter shall be to RSMo 1994 unless otherwise indicated) or under the lease agreement between the parties because section 379.203 applies to all insurance contracts delivered in Missouri and common carriers are not exempted from this requirement.

Essentially the facts are not disputed. Blake was injured on January 25, 1990, when the motor vehicle (vehicle) he was operating collided with the railing on Interstate 44, near Springfield, Missouri, as he avoided an uninsured motorist whose automobile had spun out of control. Blake owned the vehicle he was operating at the time of the accident but had leased it to his employer, Central. Central is a transport company with its principal place of business in the state of Michigan, but was conducting business in the state of Missouri at the time of the accident.

On December 13, 1983, Blake and Central had entered into an owner-lessor agreement in the state of Missouri (agreement) regarding the vehicle, whereby Central was to provide insurance coverage for the vehicle. The agreement provides in pertinent part:

*OWNER LESSOR LEASE AGREEMENT*

\* \* \*

8. The Lessee has the legal obligation to maintain insurance coverage for the protection of the public pursuant to regulations of the Interstate Commerce Commission. . . .

9. . . . .The Lessee shall furnish and pay the cost of job liability, property damage, and cargo insurance on the equipment while same is operated in the service of the Lessee. The Lessee shall keep and maintain this insurance coverage at or above the minimum amounts required by the applicable laws of the states in which the equipment travels.

\* \* \*

Further, at the time of the accident Blake had in "full force" two contracts of insurance with State Farm Insurance Company (State

Farm), an insurance company operating under the laws of Missouri.

Pursuant to the agreement, Central purchased an insurance policy (policy) from the National American Insurance Company (NAIC), located in Chandler, Oklahoma. The policy was negotiated in Michigan, and written by NAIC in Oklahoma. The policy was delivered to Central's place of business in Michigan.

The policy applies to "ALL EQUIPMENT OWNED AND/OR OPERATED BY THE NAMED INSURED," and provides in pertinent part:

## SECTION II–LIABILITY COVERAGE
## 2. COVERAGE EXTENSIONS

\* \* \*

b.   Out of State Coverage Extensions. While a covered "auto" is away from the state where it is licensed we will:

\* \* \*

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out of state vehicles by the jurisdiction where the covered "auto" is being used.

\* \* \*

Initially, we note that Blake's original petition is not part of the record. However, in his second amended petition (petition) against Central, and State Farm, Blake essentially alleges that pursuant to section 379.203, Central must comply with the agreement which includes a provision that Central provide uninsured motorist coverage for Blake. In count two of his petition, Blake alleges that pursuant to two personal insurance contracts provided by State Farm, Blake was to receive uninsured motorist coverage from State Farm. Blake later filed a motion to dismiss count two of his petition against State Farm, leaving only the claims against Central.

Subsequently, Central filed its answer to Blake's petition admitting that Central was a corporation doing business in Missouri as a transport company, and that Blake had leased a vehicle to Central. However, Central denied essentially all of the allegations made by Blake. In addition, Central raised several affirmative defenses including: (1) Blake's failure to state a cause of action against Central for which relief could be granted because (a) under the applicable laws of Missouri Central was not required to provide uninsured motorist coverage because of the exemption afforded common carriers; and (b) Blake failed to state a cause of action under section 379.203; (2) Blake's cause of action was barred by the sole remedy of worker's compensation; and (3) whatever injuries and/or damages Blake allegedly sustained, they were caused and/or contributed to in whole or in part by his own negligence in failing to keep a careful lookout for his own safety and any recovery should be reduced by the amount of plaintiff's comparative fault.

On August 30, 1996, Central filed a motion for summary judgment, accompanied by exhibits A, B, and C. Exhibit A is Blake's petition; exhibit B is the affidavit of Mark Dadabbo (Dadabbo), President of Liberty Bell Agency (Liberty Bell), who has personal knowledge of Central's operations and the issuance of an insurance policy to cover its leased vehicles, in which he states that after negotiations between Central in Michigan with NAIC in Oklahoma, the policy was issued to Central by NAIC, and was delivered to Central at its principal place of business and place of incorporation in Michigan. In Exhibit C, Central provided the opinion in *Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818 (Mo.App. E.D.1996) (now reported as 936 S.W.2d 818 (Mo. banc 1997)), which indicates that section 303.350 exempts common carriers from the requirements of Chapter 303. In its motion, Central prays that: (1) section 379.203 did not apply as the insurance policy was delivered in the state of Michigan; (2) common carriers are exempt from providing uninsured motorist coverage pursuant to section 303.350; and therefore Central was not required to provide uninsured motorist coverage for the accident.

On or about October 8, 1996, Blake filed an untimely response and memorandum in opposition to Central's motion for summary

judgment, accompanied by his affidavit, and a copy of the agreement, exhibit A; a copy of the endorsement changes to the policy as of 1987, exhibit B; a copy of the endorsement changes to the policy as of 1988, exhibit C; and exhibit D, which is two letters Blake had received from: (1) Pam Semany, a claims representative of Liberty Bell, stating that Liberty Bell was the claim agent for Central and NAIC, and the policy did not include uninsured motorist coverage; and (2) John Rehmer, a claims representative at State Farm, stating that Blake did have two policies in force with State Farm, worth $25,000 each, on the date of the accident.

In his response, Blake reiterates the allegations set forth in his petition. Further, Blake's affidavit states that upon entering into the agreement with Central, Blake signed the agreement in St. Louis, Missouri, and that according to the agreement, Central was to maintain insurance coverage on the vehicle Blake was driving at the time of the accident. Blake's affidavit states he was advised by Central through letters sent to his attorney that the policy had uninsured motorist coverage.

On November 12, 1996, Central filed its reply to Blake's response, citing the three reasons given in support of its motion for summary judgment. In addition, Central argued that the agreement did not provide uninsured motorist benefits, but provided for insurance coverage for the protection of the public, and that Central had fulfilled these financial obligations pursuant to the requirements of the Interstate Commerce Commission (ICC). Moreover, Central stated that Blake's response did not comply with Rule 74.04(c), and that the two letters contained in exhibit D of Blake's response did not constitute admissions, but were misrepresented by Blake and amounted to illegal modifications of the agreement.

On December 18, 1996, the trial court granted Central's motion for summary judgment, finding that the agreement between Central and Blake did not require uninsured motorist coverage. The trial court also found that since the policy was issued and delivered in Michigan, section 379.203 was inapplicable to Central. Moreover, the trial court found that Central had complied with the regulations of the ICC, and had provided liability insurance for the protection of the public. Finally, the trial court found that as a common carrier Central was exempt from the duty to provide uninsured motor vehicle coverage, pursuant to section 303.350.

In his only point on appeal, Blake contends that the trial court erred in granting Central's motion for summary judgment based on the finding that Central was not required to have insurance pursuant to section 303.350 or under the agreement because section 379.203 applies to all insurance contracts delivered in Missouri and common carriers are not exempted from this requirement. Blake contends that the common carrier exemption provided pursuant to section 303.350 does not exempt Central under section 379.203, and that Blake and Central had contracted a separate agreement for uninsured motorist coverage, making that coverage available. Alternatively, Blake argues that the policy requires uninsured motorist coverage since Central's vehicle was being used in Missouri.

Blake claims that pursuant to the agreement, he is entitled to uninsured motorist benefits because the agreement required Central to provide insurance coverage for the protection of the public and the plain language of the agreement requires Central to provide the minimum amount of uninsured motorist coverage under Missouri law because Central is a resident of Missouri, and the vehicle was being used in Missouri. Thus, Central's motion for summary judgment and Blake's response thereto, raise issues of law; primarily, the interpretation of the agreement and the applicable statutory provisions.

■ Initially, we note that section 303.350 exempts motor vehicles owned by federal, state, or municipal governments, political subdivisions, and common carriers from the duty to provide uninsured motorist coverage. Section 303.350 provides:

**303.350. Chapter not applicable to government or common carriers.** Notwithstanding anything else herein contained, this chapter shall not apply with respect to any motor vehicle owned by the United

States, the state of Missouri, or any political subdivision of this state, or any municipality therein, nor shall this chapter apply to any common carrier or contract carrier whose operations are subject to the jurisdiction of and are regulated by the interstate commerce commission or the public service commission of Missouri, or by regulatory ordinances of the municipalities served by such common or contract carrier, and which shall have satisfied any applicable requirements concerning bond, insurance or proof of financial responsibility imposed by the regulatory authority having jurisdiction over the carrier's operations.

It is not disputed that Central, a corporation which conducts business in Missouri as a transport company, is a common carrier. As a common carrier, Central falls within the jurisdiction of the ICC and is exempt from the duty to provide uninsured motorist coverage, pursuant to section 303.350. *Clayton v. Bi–State Development Agency*, 856 S.W.2d 386–87, (Mo.App. E.D.1993).

■ Clearly, the agreement provides that Central was to "maintain insurance coverage for the protection of the public pursuant to regulations of the Interstate Commerce Commission." We found that the phrase "insurance coverage for the protection of the public," means liability insurance for the protection of innocent third parties, not the insured's employees. *Transport Indem. Co. v. Teter*, 575 S.W.2d 780, 786 (Mo.App.1978). In *Teter*, the court acknowledged that the purpose of the Interstate Commerce Act's provision of protecting the public against injury from the negligent operation of owned or non-owned motor vehicles used by common carriers under the jurisdiction of the ICC is "fully served," by the issuance of a policy insuring the carrier against claims of negligent injury from its motor vehicle operations; coverage of the driver is extraneous to this essential purpose. *Id.* at 785–86. The "public" is thereby afforded the legislatively mandated "protection." *Great West Cas. Co. v. Mallinger Truck Line, Inc.*, 640 S.W.2d 479, 485 (Mo.App.1982).

Blake argues that the common carrier exception of section 303.050 has been voided as against public policy. He cites *Martin v. State Farm Mut. Auto. Ins. Co.*, 755 S.W.2d 638 (Mo.App.1988) for support. Blake's reliance on *Martin* is misplaced. *Martin* involved a plaintiff who was injured while operating a motor vehicle for his employer, a municipality. However, the plaintiff sued under his own automobile insurance policy which included uninsured motor vehicle coverage. The policy specifically exempted government-owned vehicles from uninsured motor vehicle coverage. Plaintiff was injured while driving a government-owned vehicle. The court held that this exemption was an attempt to whittle away at the purpose of section 379.203, protecting purchasers of insurance, and struck it down. *Martin* does not void section 303.350.

■ Alternatively, Blake argues that since he is a Missouri resident, and the agreement covered a vehicle garaged in Missouri, Central was obligated to provide uninsured motorist coverage, pursuant to section 379.203. Section 379.203 provides in pertinent part:

**379.203. Automobile liability policy, required provisions-uninsured motorist coverage required-recovery against tortfeasor, how limited.**–1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, or in the case of any commercial motor vehicle, as defined in section 301.010, RSMo, any employer having a fleet of five or more passenger vehicles, such coverage is offered therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

\* \* \*

Section 379.203 addresses uninsured motorist coverage by imposing a requirement on

automobile liability policies of insurance "delivered or issued for delivery" in Missouri "with respect to any motor vehicle registered or principally garaged" in Missouri. Section 379.203.1. Central's policy was not delivered or issued for delivery in Missouri. NAIC issued and delivered the policy to Central's place of business in Michigan. That Blake garaged the vehicle in Missouri does not implicate section 379.203.1. *Royse v. American Economy Ins. Co.*, 866 S.W.2d 873, 875 (Mo.App. W.D.1993).

Therefore, we find that the trial court did not err in granting summary judgment in Central's favor.

Judgment affirmed.

CRANE and MOONEY, JJ., concur.