2011 VT 102

## Thomas P. MCGOFF and Margaret P. McGoff v. ACADIA INSURANCE COMPANY and Fireman's Insurance Company of Washington, D.C.

[30 A.3d 680]

No. 10-264

¶ 1. September 1, 2011. Plaintiffs Thomas and Margaret McGoff appeal an order of the Washington Superior Court's Civil Division granting defendant Acadia Insurance Company summary judgment with respect to plaintiffs' underinsured motorists (UIM) claim arising from an automobile accident in which Thomas McGoff was injured. We affirm.

¶ 2. At all relevant times, Thomas McGoff was employed by A.R. Sandri, Inc., a Massachusetts corporation that operates gas stations and other businesses in New England and New York. McGoff was a sales manager whose territory included northern Vermont and New Hampshire. At the time of the accident that led to the instant lawsuit, Sandri had supplied McGoff with a company car, a Pymouth Caravan, which he kept at his Barre, Vermont home. The Plymouth was owned by Sandri, registered in Massachusetts, and insured by Acadia. Sandri had two fleet insurance policies with Acadia — one for vehicles registered in Massachusetts and one for vehicles registered in other states. The Plymouth, along with 133 other vehicles, was covered by the policy issued for vehicles registered in Massachusetts. The policy listed the vehicles, including the Plymouth driven by McGoff, as being garaged in Massachusetts, apparently based on Sandri's representation. The policy had elective UIM coverage of $20,000 per person and elective liability coverage of $1,000,000 per occurrence.

¶ 3. In June 2004, McGoff was seriously injured in a two-car automobile accident in Richmond, Vermont. McGoff made a claim against the other driver, who carried liability coverage of $100,000. In the spring of 2007, he also made the instant claim for additional UIM coverage against Acadia. Acadia denied coverage because the policy's $20,000 UIM coverage is less than the alleged tortfeasor's $100,000 liability coverage. See 23 V.S.A. § 941(f) (providing that motor vehicle is underinsured to extent that liability insurance limits are less than limits of insured's UIM coverage or that liability insurance has been reduced by payments to others to amount less than limits of insured's UIM coverage); *Concord Gen. Mut. Ins. Co. v. Estate of Lawton*, 2003 VT 7, ¶ 1, 175 Vt. 475, 820 A.2d 196 (mem.) (reaffirming "that 23 V.S.A. § 941(f) entitles an injured insured to [UIM] coverage only when the total limits of liability laid out in the tortfeasor's policy are less than the [UM/UIM] coverage stated in the insured's policy"); *Monteith v. Jefferson Ins. Co.*, 159 Vt. 378, 386, 618 A.2d 488, 492-93 (1992) (noting that UIM coverage "fills the 'gap' between the tortfeasor's liability coverage and the injured party's [UIM] coverage") (quotation omitted). Based on this principle, Acadia moved for summary judgment. The superior court denied Acadia's initial motion for summary judgment in August 2007, noting that there were disputed factual questions concerning where the Plymouth had been garaged and what coverage Sandri had elected in the Acadia policy. Acadia renewed its motion for summary judgment in December 2007 and updated the motion in October 2008 and September 2009. In May 2010, the court granted Acadia's motion, ruling that Vermont's uninsured/underinsured (UM/UIM) insurance requirements do not apply to the Acadia fleet policy because the policy was not "delivered or issued for delivery in this state." 23 V.S.A. § 941(a).

¶ 4. Without setting forth "[a] statement of the issues presented for review," as required by V.R.A.P. 28(a)(1), plaintiffs generally claim that the superior court erred by granting Acadia summary judgment and then proceed, over the remainder of their brief, to assert various points of law and fact — some suggesting claims of error, some not, and some raised for

the first time on appeal. Plaintiffs' main argument, though, appears to be that the court erred in ruling that Vermont's UIM requirements do not apply to the instant policy on grounds that the policy was not delivered or issued for delivery in Vermont. Plaintiffs appear to argue that because the Plymouth was garaged in Vermont rather than in Massachusetts, as indicated in the Acadia policy, and thus should have been registered in Vermont rather than Massachusetts, § 941's UIM requirements should apply. This position is contrary to the plain language of § 941(a) as well as the nearly unanimous relevant case law, and therefore we decline to adopt it under the present circumstances.

¶ 5. In relevant part, § 941(a) provides that no motor vehicle policy "may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless" UM/UIM coverage is provided for the protection of the insureds. Section 941(c) requires that UM/UIM coverage in a policy be provided in the same amount as the liability coverage "unless the policyholder otherwise directs." As noted, the Acadia policy elected $20,000 in UIM coverage, which was permissible under Massachusetts law. Plaintiffs, however, seek to apply § 941(c) to compel UIM coverage of $1,000,000 — the amount of liability coverage in the Acadia policy. In furtherance of this argument, plaintiffs contend that, although the face of the Acadia policy indicates that Sandri elected $20,000 in UIM coverage, there remains a question as to whether Acadia notified Sandri that it had the option of electing UIM coverage up to the policy's $1,000,000 liability limits.

¶ 6. Plaintiffs' attempt at obtaining $1,000,000 in UIM coverage by applying the requirements of § 941 fails primarily because, on its face, § 941(a) limits application of that statute's requirements to policies "delivered or issued for delivery in this state." The Acadia policy in question was not delivered or issued for delivery in Vermont. Rather, it was a Massachusetts fleet policy that was written on a Massachusetts form and approved by a Massachusetts regulator. The policy was issued and delivered to Sandri, a Massachusetts company with its principal place of business in Massachusetts, by a Massachusetts agent, for vehicles — including the Plymouth supplied to McGoff — registered in Massachusetts. In short, given § 941(a)'s plain language, the statute does not apply to the subject policy.

¶ 7. Plaintiffs do not benefit from the fact that the language in § 941(a) also refers to vehicles "registered or principally garaged in this state." Even if we assume that the critical fact is where the Plymouth was actually garaged rather than where the policy indicated it was garaged, but see *Liberty Mut. Ins. Co. v. Craddock*, 338 A.2d 363, 374 (Md. Ct. Spec. App. 1975) (holding that, for purposes of determining applicability of UM provisions, "statement in the policy is conclusive of where the vehicle was principally garaged"), the salient language in § 941(a) limits application of the statute to policies "delivered or issued for delivery in this state *with respect to* any motor vehicle registered or principally garaged in this state." (Emphasis added.) The two key phrases are connected by the term "with respect to" and thus are conjunctive rather than disjunctive, thereby requiring both elements to be satisfied for the statute to apply. See *Pierzchalski v. Northbrook Prop. & Cas. Co.*, No. 89-15862, 1990 WL 127604, at *3 (9th Cir. Sept. 5, 1990) (construing statute nearly identical to § 941(a) to apply to "all vehicles registered or principally garaged in Arizona, but only when the policy insuring those vehicles is 'delivered or issued for delivery' in Arizona"); see also *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 17, 178 Vt. 77, 872 A.2d 292 ("[W]e presume that legislative language is in-

serted advisedly and not intended to create surplusage." (quotation omitted)).

¶ 8. Whether the issue is framed as one of statutory construction or choice-of-law, the courts construing statutes similar to § 941(a) are nearly unanimous in concluding that insurance policies such as the instant Acadia policy are not subject to that state's statutory UM/UIM coverage requirements unless the policy was delivered or issued for delivery in that state, even if the subject vehicle was regularly garaged in that state. See *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 293 (Ala. 2007) (declining to apply Alabama UM statute to fleet policy "issued and delivered in Tennessee" even though "undisputed evidence" indicated that vehicle was operated, maintained, and "principally garaged" in Alabama); *Gilbert v. Hodgkins*, No. Civ.A. CV-05-149, 2006 WL 1545532, at *2 (Me. Super. Ct. Mar. 16, 2006) (holding that because "Maine's UIM requirement reaches only insurance contracts issued in the state of Maine, with respect to vehicles registered in or principally garaged in Maine," the state "only has an interest in implementing its policy with respect to UIM recovery where the injured party is covered by a UIM contract issued in Maine"); *Central Transport, Inc. v. Blake*, 985 S.W.2d 805, 809-10 (Mo. Ct. App. 1998) (concluding that Missouri statute nearly identical to § 941(a) did not apply because, even though vehicle was garaged in Missouri, policy was issued and delivered in Michigan); *Insurance Co. of Pa. v. Hampton*, 657 A.2d 976, 978-79 (Pa. Super. Ct. 1995) (declining to apply nearly identical Pennsylvania statute where vehicle was frequently garaged in Pennsylvania, but policy was issued, and vehicle registered, in Delaware); *Burns v. Aetna Cas. & Sur. Co.*, 741 S.W.2d 318, 322 (Tenn. 1987) (concluding that similar statute did not apply to fleet insurance policy issued in Connecticut and delivered in Rhode Island, even though vehicle was principally garaged in Tennessee). We find unavailing plaintiffs' attempts to distinguish these cases, which are consistent with the plain language of § 941(a).

¶ 9. This majority position is also consistent with the relevant provision of the Restatement on Conflict of Laws. See Restatement (Second) of Conflict of Laws § 188 (1971) (stating that rights and duties with respect to contracts are determined by state with "most significant relationship to the transaction and the parties," taking into account place of contract, place of negotiation and performance of contract, location of subject matter of contract, and residence, incorporation, and place of business of contracting parties; noting that if negotiation and performance of contract are in same state, that state's law will usually be applied). Plaintiffs' reliance on § 193 of the Restatement is unavailing. See Restatement (Second) of Conflict of Laws § 193 cmt. a (stating that law governing contracts for insurance of things such as trucks that move constantly from state to state must be determined by principles set forth in § 188).

¶ 10. The only case law that plaintiffs cite to the contrary is *Henderson v. Lincoln National Speciality Insurance Co.*, 626 N.E.2d 657 (Ohio 1994), which has little persuasive value. In that case, the court, by a 5-2 margin, answered a certified question in one sentence in the affirmative without explanation — whether a statute nearly identical to § 941(a) applied to policies not delivered or issued for delivery in Ohio when the vehicles were registered and principally garaged in Ohio. The dissenting opinion, on the other hand, persuasively followed the rationale of other courts in adhering to the plain language of the statute. *Id.* at 658. In short, there is no analysis from the *Henderson* majority to inform our decision.

¶ 11. According to plaintiffs, the "central issue" in this case is whether the Acadia policy, which was "meant" for de-

livery in Vermont, must comply with § 941(c). The premise to this argument is faulty, however. Nothing in the record suggests that the Acadia policy in question was "meant" to be delivered in Vermont. As noted, Sandri, a Massachusetts business and McGoff's employer, owned two fleet insurance policies — one covering vehicles registered in Massachusetts, including the Plymouth supplied to McGoff in Vermont, and one covering vehicles registered in other New England states and New York. Even assuming that Sandri and Acadia knew that the Plymouth would be principally garaged in Vermont, and further assuming that the vehicle should have been — and in fact had been — registered in Vermont, the Plymouth presumably would have been added to the second Acadia policy that included vehicles not registered in Massachusetts — a policy that presumably was delivered or issued for delivery in Massachusetts, where Sandri's headquarters was located. Nothing in the record suggests otherwise. Certainly, nothing in the record suggests that the policy would have been delivered or issued for delivery in Vermont even assuming all of the principals knew where the Plymouth was actually garaged. We recognize that in determining whether material facts exist for trial, all reasonable doubts must be resolved in favor of the nonmoving party, see *O'Donnell v. Bank of Vt.*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997), but in this case, despite having years for discovery, plaintiffs failed to argue before the superior court that the subject policy would have been delivered or issued for delivery in Vermont had Acadia known and acknowledged that the Plymouth was being garaged in Vermont and had Sandri registered the vehicle in Vermont. Thus, the issue was not preserved for appeal. See *Progressive Ins. Co. v. Brown*, 2008 VT 103, ¶ 8, 184 Vt. 388, 966 A.2d 666 (noting that arguments are not preserved for appeal unless they are raised with specificity and clarity before trial court).

¶ 12. As noted earlier, plaintiffs also contend that Acadia failed to notify Sandri that, under Massachusetts law, it could elect UIM coverage up to the level of the policy's liability coverage. As plaintiffs acknowledge, however, Massachusetts law does not require insurance companies to advise clients of the option to purchase UIM coverage up to the amount of bodily injury liability coverage — unless special circumstances exist. Here, the Acadia policy indicates that Sandri in fact elected to undertake UIM coverage of $20,000, as opposed to none or some other amount. Further, as the trial court found, the record did not demonstrate special circumstances compelling additional notice requirements, but rather revealed an ordinary business relationship between an insurer, a commercial broker, and a client corporation operating a fleet of vehicles across several states. Therefore, even if we assume that plaintiffs have standing to bring their lack-of-notice argument, the argument would fail in this instance. And even if there was a notice requirement in these circumstances, we fail to see how the lack of notice could somehow trigger § 941(c), which would nonetheless remain inapplicable in this case for the reasons stated above.

¶ 13. Finally, we reject plaintiffs' argument "that Vermont's UIM law should be applied to policies that are admittedly excluded by the statutory test because it is the right thing to do to protect the public." Our role is to interpret the law to give effect to the Legislature's intent, not to impose our policy preferences on the public. See *In re Route 103 Quarry*, 2007 VT 66, ¶ 4, 182 Vt. 569, 933 A.2d 189 (mem.) (noting that this Court's "ultimate goal" in interpreting statutes is to determine intent of Legislature). The Legislature's decision to apply its UIM requirements only to insurance policies delivered or issued for delivery in this state is not irrational or absurd so that we are compelled to ignore the plain dictates of the

statute. See *State v. Longley*, 2007 VT 101, ¶ 10, 182 Vt. 452, 939 A.2d 1028 (noting presumption against imposing statutory construction that would lead to absurd results).

*Affirmed.*