NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 14

No. 2018-093

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Timothy P. O'Keefe | January Term, 2019 |

Michael R. Kainen, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Pearson, Supr. J. (Ret),
Specially Assigned

¶ 1.    **EATON, J.**   Defendant appeals his convictions, following trial by jury, on two counts of violation of an abuse protection order (VAPO), second offense. See 13 V.S.A. § 1030. Because we find the State failed to prove defendant was validly served with the order he was accused of violating, we reverse.

¶ 2.    The evidence in support of the jury verdict was as follows. See Record v. Kempe, 2007 VT 39, ¶ 19, 182 Vt. 17, 928 A.2d 1199 ("In reviewing the jury's verdict, we view the evidence in the light most favorable to the verdict, excluding the effect of modifying evidence, and will sustain the verdict if it is fairly and reasonably supported by any evidence."). Defendant had been in a relationship with T.M., and they had a child together. T.M. had been assaulted by

defendant in the past, and he was convicted of domestic assault on T.M. in February 2012. He was also convicted of aggravated stalking of T.M. and violating an abuse-prevention order issued for her protection in October 2012. He was incarcerated based on the October 2012 convictions. He completed his sentences and was released from incarceration in Vermont in April 2014.

¶ 3.    Prior to defendant's release from custody, T.M. applied for and received a temporary protection order in New Hampshire, where she lived. The New Hampshire court held a hearing on T.M.'s request for a final protection order in June 2014. Both parties and their attorneys were present. At the conclusion of the hearing, the court indicated it was going to issue a permanent order of protection in T.M.'s favor, and T.M. and her attorney left the court.

¶ 4.    A final order of protection issued. The return of service of the order indicates it was served on defendant on the day of the final hearing through service on his attorney. The final order stated that it was in effect from June 12, 2014, to June 12, 2015, and that defendant "shall not have any contact with [T.M.], whether in person or through third persons, including but not limited to contact by telephone, letters, fax, e-mail, the sending or delivery of gifts or any other method unless specifically authorized by the court." Defendant was also prohibited from coming within 300 feet of T.M.

¶ 5.    T.M. and defendant had previously received orders in Vermont concerning child custody, visitation, and child support. In recognition of this, the final protection order stated that custody and visitation were governed by the orders of the Vermont court, that it anticipated that restrictions on such contact would be registered and litigated in New Hampshire, and that any modifications to the Vermont orders would govern in New Hampshire.

¶ 6.    On the date of the alleged offenses, June 30, 2014, defendant and T.M. were at the Windham Superior Court because defendant had filed a motion related to their child-support order. Defendant arrived at the court first. As T.M. pulled into the parking lot and was about to get out of her truck, she heard defendant "hollering to [her] from the end of [her] vehicle." Defendant

2

asked T.M. if they could talk. She was panicked and anxious but agreed to talk with defendant, knowing there was a court officer standing about thirty feet away. She stayed in her truck and defendant came closer as he spoke to her. He told T.M. that he "didn't care about the money, the only reason he was doing this was so we could talk." He said he wanted to see their daughter and asked if T.M. could please fix things so he could see her. He also asked T.M. why she had reported to the authorities in New Hampshire the threatening phone calls that led to the protection order and to additional criminal charges against him in New Hampshire. At that point, the security officer came toward T.M.'s truck and defendant left and went into the courthouse. Defendant was arrested in the courthouse and subsequently charged with two counts of violation of the New Hampshire abuse-prevention order, one for having contact with T.M. and one for violating the 300-foot field restriction.[1] While being arrested, defendant told the officer he thought the abuse order was only valid in New Hampshire.

¶ 7. Defendant argues the charges against him should be dismissed because the State failed to prove the existence of an enforceable abuse-prevention order because it did not prove the order had been validly served on him. Defendant also raises challenges to the content of the order, contending its terms were ambiguous and that the field restriction in the order impermissibly prevented him from accessing the courts in connection with the child-support hearing. Because we agree the State failed to prove valid service of the order and reverse on that basis, we need not reach defendant's other contentions.

¶ 8. The State's evidence at trial concerning service of the New Hampshire final abuse-prevention order, which formed the basis of the VAPO charges in Vermont, established the final

---

[1] Defendant was also charged with obstruction of justice, which, along with the habitual offender and prior domestic-assault convictions, had been bifurcated from initial jury consideration. Following the guilty verdicts on the VAPO charges, the State dismissed the obstruction-of-justice charge, and defendant thereafter admitted his prior domestic-assault convictions for enhancement purposes and pleaded guilty to being a habitual offender. Defendant reserved his right to appeal the domestic-assault convictions.

order had been served on defendant's New Hampshire counsel. T.M. also testified that the judge at the final restraining-order hearing indicated the final order would be granted, but T.M. and her counsel left the courtroom before defendant and his counsel. In addition, the State argued the final order itself indicated defendant was present at the final hearing and thus he had notice of the existence of the final order. The State also contended that defendant's conduct in approaching T.M. at the Windham Superior Court and his statement at his arrest showed he knew that an order existed. The State called no witness to establish in-hand service of the final order on the defendant.

¶ 9. At the close of the evidence, the court denied defendant's motion for acquittal based upon failure to prove valid service on defendant. Defendant contended that New Hampshire law required the final order be mailed to defendant in order to be properly served. The court disagreed and charged the jury, over defendant's objection, that the State was required to prove either that defendant had been served with the order or that the order had been served on defendant's counsel while defendant knew of the order's existence. The jury returned guilty verdicts on each VAPO charge.

¶ 10. Review of a trial court's denial of a motion for judgment of acquittal is de novo. See State v. Reed, 2017 VT 28, ¶ 10, 204 Vt. 399, 169 A.3d 1278 ("We review de novo a motion for judgment of acquittal." (quotation omitted)). The Court must determine whether "the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Elkins, 155 Vt. 9, 17-18, 580 A.2d 1200, 1204 (1990) (quotation and alterations omitted). Failure to comply with 15 V.S.A. § 1108(c), which establishes the enforceability of the New Hampshire protective order, raises questions of law that are reviewed de novo. See State v. Mott, 166 Vt. 188, 197, 692 A.2d 360, 366 (1997) ("[T]he validity of the order is a legal issue for resolution by the trial court and not by the jury.").

¶ 11. In a VAPO prosecution, the State is required to prove there has been a violation of an abuse-prevention order after that order was properly served on the defendant. State v. Crown, 169 Vt. 547, 549, 726 A.2d 493, 495 (1999) (mem.) (holding that service of an order was adequate notice for due process purposes) (citing Mott, 166 Vt. at 196, 692 A.2d at 366)). For violations of orders issued under Vermont law, 13 V.S.A. § 1030(a) requires the State to prove the violation of an abuse-prevention, juvenile-protection, or stalking order after the defendant has "been served notice of the contents of the order." When an abuse-prevention order issued in another state has allegedly been violated, as was the case here, the State is required to also show the foreign order was enforceable in Vermont. See 15 V.S.A. § 1108 (outlining criteria State must prove to show foreign abuse-prevention order is enforceable in Vermont courts). An abuse-prevention order issued in another state is enforceable in Vermont if:

(1) The defendant has received notice of the order in compliance with the requirements of the issuing state.

(2) The order is in effect in the issuing state.

(3) The court in the issuing state had jurisdiction over the parties and the subject matter under the law of the issuing state.

(4) In the issuing state the law gives reasonable notice and opportunity to be heard to the person against whom the order is sought sufficient to protect that person's right to due process. . . .

15 V.S.A. § 1108(c).

¶ 12. Here, if the State did not satisfy the provisions of 15 V.S.A. § 1108(c), then the New Hampshire abuse-prevention order was not enforceable against defendant in Vermont.

¶ 13. Defendant's challenge to the enforceability of the New Hampshire order centered upon whether defendant received notice of the order in compliance with the requirements of New Hampshire law. Because enforceability of a foreign order under 15 V.S.A. § 1108(c) requires notice of the order in compliance with the requirements of the issuing state, New Hampshire's notification statute, § 173-B:8, is controlling. N.H. Rev. Stat. § 173-B:8. Section 173-B:8 outlines

5

the requirements for service of temporary and subsequent orders in New Hampshire. Specifically, it requires temporary orders must be served by a peace officer and subsequent orders shall be sent to defendant's last address of record.[2]

¶ 14. Our review of the record does not show any evidence that a copy of the final order was served on defendant by mailing it to his last known address, as required by § 173-B:8.[3] The State argues that Civil Rule 3(a) of the Rules of the Superior Court of the State of New Hampshire, which requires copies of pleadings filed with the court to be furnished to all other counsel and any self-represented party, renders service on the attorney sufficient. We disagree, at least in this context. Nothing in New Hampshire law provides that service on an attorney meets the service requirements of § 173-B:8, which specifically pertains to service of abuse-prevention orders and does not provide for service of a subsequent order on an attorney or reference Civil Rule 3.

¶ 15. The trial court reasoned that because the New Hampshire statute did not require "in-hand" service on the defendant, service on the attorney was permissible and perhaps even superior to service by mailing the order to defendant's last known address. Whether a different means of service might be more effective than those provided by statute or rule is not a proper

---

[2] Defendant's argument on appeal shifted in large part due to the lack of proof that defendant received a written copy of the order, as required by § 173-B:5. N.H. Rev. Stat. § 173-B:5. This argument was not raised below and is waived. State v. Sole, 2009 VT 24, ¶ 13, 185 Vt. 504, 974 A.2d 587 ("Arguments that are neither litigated nor decided below will not be addressed for the first time on appeal." (quotation omitted)). The State argues defendant's lack-of-proper-service argument on appeal was premised on § 173-B:5 and not § 173-B:8, and therefore any argument based upon § 173-B:8 was abandoned. See N.H. Rev. Stat. § 173-B:5. We disagree. Defendant raised 13 V.S.A. § 1108 and argued New Hampshire law required written notice. As notice by mailing under § 173-B:8 contemplates a written order, the argument raised below was not abandoned.

[3] There was likewise no evidence that defendant was personally served with the final order. Though we note that Protocol 7-33 of New Hampshire's Domestic Violence Protocols encourages personal service of final domestic violence orders, we do not reach the question of whether such service would comply with New Hampshire law. New Hampshire Domestic Violence Protocols, Protocol 7-33, https://www.courts.state.nh.us/district/protocols/dv/c7.pdf [https://perma.cc/7N79-WNUB].

calculus for the trial court in applying 15 V.S.A. § 1108(c) and the service requirements of the issuing state. See Ackerman v. Kogut, 117 Vt. 40, 51, 84 A.2d 131, 138 (1951) ("It is axiomatic that the proper method of serving process must be adopted in order to render the service effective."); S. Down Recreation Ass'n v. Moran, 686 A.2d 314, 316 (N.H. 1996) ("Where a statute points out a particular method of serving process . . . such method must be followed." (quotation omitted)). The requirement that any order subsequent to the temporary order be mailed to the last known address of defendant is not dependent upon whether that defendant is represented by counsel and does not leave room for value judgments on whether some other means of service is superior.

¶ 16. The State also argues that defendant had actual notice of the order and therefore proof of service was unnecessary. In support of this position, the State relies on Civil Rule 48(d) of the Rules of the Superior Court of the State of New Hampshire, which requires a defendant to have "actual notice . . . by personal service or otherwise" in injunction or restraining order proceedings in superior court. Because New Hampshire law contains a specific service provision in cases brought under the Protection of Persons from Domestic Violence, § 173-B:8, we give effect to that provision over the more general service requirements in cases seeking an injunction or restraining order generally. State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126 ("In interpreting rules of procedure and evidence, we employ tools similar to those we use in statutory construction."); Hartford Bd. of Library Trs. v. Town of Hartford, 174 Vt. 598, 599, 816 A.2d 512, 515 (2002) (mem.) ("We also bear in mind the general rules of statutory construction that a specific statute governs over a more general one . . . ."); see, e.g., In re Route 103 Quarry, 2007 VT 66, ¶¶ 3-5, 182 Vt. 569, 933 A.2d 189 (mem.) (explaining that statute expressly "control[ling] and establish[ing] discretionary stays in appeals not only to, but also from, the Environmental Court" governed appellant's request for stay from Environmental Court rather than "general civil rule of procedure" regarding automatic stays). In any event, the issue here is not actual, or even

7

constitutionally sufficient notice, but rather compliance with the service requirements of the issuing jurisdiction, whatever those may be.

¶ 17.    In the absence of evidence that the final order had been served on defendant by proof of mailing it to his last known address, the State failed to prove service in compliance with New Hampshire law, which has not adopted actual notice as a substitute for service of process in abuse cases.  As a result, the State has not established the final order was enforceable in Vermont pursuant to 15 V.S.A. § 1108(c) and defendant's motion for judgment of acquittal should have been granted.

Reversed.

FOR THE COURT:

_____

Associate Justice