NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 30

No. 2020-143

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Clayton Turner | December Term, 2020 |

John R. Treadwell, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton and Cohen, JJ., and Morris, Supr. J. (Ret.),
         Specially Assigned

¶ 1.     **COHEN, J.**  Petitioner appeals the criminal division's order denying his petitions seeking expungement of two prior escape convictions. We conclude that expungement of petitioner's prior escape convictions was not available to him under the governing law; accordingly, we affirm the criminal division's decision.

¶ 2.     Petitioner was convicted of absconding from furlough twice, once in November 2001 and once in January 2009. In June 2011, petitioner was charged with second-degree aggravated domestic assault, with a habitual-offender enhancement that was based in part on the two earlier absconding-from-furlough convictions. Petitioner left the state and was not arrested on the domestic-assault charge until November 2018. He was arraigned and held without bail

under 13 V.S.A. § 7553, which allows defendants who have been charged with an offense punishable by life imprisonment to be held without bail when the evidence of guilt is great. See State v. Turner, No. 2019-008, 2018 WL 7200669 (Vt. Jan. 23, 2019) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo19-008.bail_.pdf [https://perma.cc/23ZU-K8FJ].

¶ 3.    In December 2019, petitioner filed petitions to expunge the two absconding-from-furlough convictions, arguing, in relevant part, that he was entitled to expungement of those convictions under the terms of Vermont's expungement statute because the Legislature had recently decriminalized absconding from furlough. See 13 V.S.A. § 7602(a)(1)(B) (providing that person may file expungement petition if "the person was convicted of an offense for which the underlying conduct is no longer prohibited by law or designated as a criminal offense"). Granting the petitions would have the effect of removing the habitual-offender enhancement to the domestic-assault charge—and thus petitioner would not be subject to a potential life sentence and could not be held without bail under § 7553.

¶ 4.    In March 2020, the criminal division denied the petitions, reasoning that although absconding from furlough is no longer a criminal offense, it remains prohibited by law, as evidenced by the fact that a person who absconds from furlough can be arrested, returned to a correctional facility, and deprived of good-time credit for the abscondment period. 28 V.S.A. § 808(d). Petitioner appeals that decision, arguing that the plain language of the expungement and escape statutes permits expungement of his prior absconding-from-furlough convictions. Further, he asserts that he has met all the conditions for granting expungement, and he asks this Court to determine in the first instance that expungement of his escape convictions is in the interests of justice.

¶ 5.    The principal argument that petitioner raises identifies a legal issue of statutory interpretation that we review without deference to the criminal division. See State v. Eldredge,

2

2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816 ("Whether a trial court properly interprets a statute is a question of law which we review de novo."). "Our goal in interpreting a statute is to identify and implement the Legislature's intent." State v. Hinton, 2020 VT 68, ¶ 11, __ Vt. __, 239 A.3d 246.

¶ 6.    Relevant to petitioner's prior convictions, the escape statue prohibits a person from "fail[ing] to return from furlough to the correctional facility at the specified time, or visit[ing] other than the specified place," as ordered. 13 V.S.A. § 1501(b)(1)(B). In 2019, the Legislature added the following statutory provision to the escape statute, as § 1501(b)(3): "It shall not be a violation of subdivision (1)(A), (1)(B), or (1)(C) of this subsection (b) if the person is on furlough status pursuant to" specified Title 28 subsections. 2019, No. 77, § 10. In the same Act, the Legislature added 28 V.S.A. § 808e, containing the following language:

> The Commissioner of Corrections may issue a warrant for the arrest of a person who has absconded from furlough status in violation of [specified Title 28 subsections], requiring the person to be returned to a correctional facility. A person for whom an arrest warrant is issued pursuant to this section shall not earn credit toward service of his or her sentence for any days that the warrant is outstanding.

Id. § 11.[1] In addition, 28 V.S.A. § 808(d), which remained in effect following the enactment of Act 77, permits the warrantless arrest and return to a correctional facility of person believed to be in violation of furlough conditions.

---

[1]    In 2020, after petitioner filed his expungement petitions, the Legislature amended § 1501(b)(3), effective January 1, 2021, to remove the 2019 decriminalization of absconding from furlough enacted in Act 77 only a year earlier. See 2019, No. 148 (Adj. Sess.), §§ 18, 25 ("It shall not be a violation of subdivision (1)(A), (1)(B), or (1)(C) of the subdivision if If the person is on furlough status pursuant to 28 V.S.A. § 808(a)(6)723, 808(e), 808(f), or 808a, 808b or 808e a violation of this subdivision (1) of this subsection requires a showing that the person intended to escape from furlough."). The Act also added the following sentence to the first sentence of § 808(e): "A law enforcement officer who is provided with a warrant issued pursuant to this section shall execute the warrant and return the person who has absconded from furlough to the Department of Corrections." Id. § 17. In the findings and purpose section of Act 148, the Legislature found in part that: (1) almost half of Vermont's sentenced prison population in fiscal year 2019 were persons returned from community supervision, primarily furlough; (2) a large percentage of those persons were returned from furlough due to technical violations rather than

¶ 7. The critical language in the expungement statute at the center of the parties' dispute is § 7602(a)(1)(B) of Title 13, which was added in 2015 along with several other provisions substantially amending and expanding the expungement statute. 2015, No. 36, § 2. Pursuant to that provision, a person "may file" for expungement if "the person was convicted of an offense for which the underlying conduct is no longer prohibited by law or designated as a criminal offense." 13 V.S.A. § 7602(a)(1)(B) (emphasis added).

¶ 8. The parties agree that at the time petitioner filed his petitions, the conduct underlying his prior escape convictions was decriminalized by Act 77 but continued to be prohibited by law, as evidenced by the fact that persons absconding from furlough were still subject to arrest and reincarceration at a correctional facility, resulting in loss of personal liberty. The issue is whether the highlighted language in § 7602(a)(1)(B)—"no longer prohibited by law or designated as a criminal offense"—made expungement available, during the eighteen-month period between the effective dates of Act 77 and Act 148, for persons having previously committed the offense of absconding from furlough. In petitioner's view, the answer is yes because Act 77 decriminalized absconding from furlough, and § 7602(a)(1)(B) permits expungement of offenses for which the underlying conduct has been either legalized or decriminalized. In the State's view, the answer is no because § 7602(a)(1)(B) permits expungement of offenses for which the underlying conduct is neither illegal nor a criminal offense.

¶ 9. At the outset, we acknowledge that the disputed language is not a model of clarity and could be read to support either petitioner's or the State's position. See State v. Brunner, 2014 VT 62, ¶ 18, 196 Vt. 571, 99 A.3d 1019 ("Ambiguity exists where a statute is capable of more than one reasonable interpretation, each vying to define a term to the exclusion of other potential

_____

new criminal offenses; and (3) the large percentage of prisoners returned from community supervision limited funding for programs and services required for high-risk people to succeed in the community. Id. § 1. Once of the three stated purposes of the Act is to "[i]mprove public safety in Vermont, while creating immediate opportunities to reduce recidivism and achieve long-term savings by reducing contract bed needs significantly." Id.

interpretations."). If petitioner's interpretation is correct, the Legislature could have simply stated that expungement is available for any conduct that is no longer a criminal offense. As the trial court noted, limiting the language to decriminalized offenses would read the phrase "prohibited by law" out of the statute and make it superfluous. See State v. Beattie, 157 Vt. 162, 165, 596 A.2d 919, 921 (1991) (citing case law and treatise for proposition that courts will decline to interpret statute so as to render significant parts of it pure surplusage). Petitioner's disjunctive reading of the disputed language to mean that satisfaction of either condition is sufficient to grant expungement even if the other condition has not been satisfied makes no sense because conduct not prohibited by law cannot be designated a crime. On the other hand, by the same token, if the Legislature intended to permit expungement for conduct that was no longer prohibited by law and no longer designated as a criminal offense, as the State posits, it could have simply stated that expungement would be made available for any conduct that is no longer prohibited by law.

¶ 10. We presume that the Legislature intended the plain, ordinary meaning of statutory words, which, if undefined in the statute, we may discern "by consulting dictionary definitions." Toensing v. Attorney Gen. of Vt., 2019 VT 30, ¶ 7, 210 Vt. 74, 212 A.3d 180 (quotation omitted). Although the word "or" is most often used in the disjunctive, it can also be used in the conjunctive, meaning "and." See Viskup v. Viskup, 150 Vt. 208, 211 n.3, 552 A.2d 400, 402 n.3 (1988) (citing Morse v. Tracy, 91 Vt. 476, 478, 100 A. 923, 924 (1917) for proposition that "disjunctive clause may be taken in conjunctive sense when it is obvious such was the intention of the Legislature from an examination of the act as a whole"); see also United States v. Fisk, 70 U.S. 445, 447 (1865) (in ascertaining legislative intent, "courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or' "); United States v. Harris, 838 F.3d 98, 105 (2d. Cir. 2016) (stating that disjunctive use of word "or" is not absolute, particularly where context dictates otherwise).

5

¶ 11. For example, in <u>Morse</u>, a statute modifying the manner of drawing juries was, by its terms, not applicable to jurors "chosen, drawn <u>or</u> summoned prior to the day on which this act takes effect." 91 Vt. at 477, 100 A. at 923 (emphasis added in <u>Morse</u>). Because the disjunctive use of the word "or" would nullify two of the modifying words, this Court read the clause to mean that the jurors unaffected by the act were those who "not only have been <u>chosen</u>, but also <u>drawn</u> and finally <u>summoned</u>." <u>Id</u>. at 478-79, 100 A. at 924 ("It is not uncommon in the construction of statutes to take a conjunctive expression in a disjunctive sense, or vice versa, when it is obvious that such is the meaning to be gathered from the whole act."); see also <u>McGoff v. Acadia Ins. Co.</u>, 2011 VT 102, ¶ 7, 190 Vt. 612, 30 A.3d 680 (mem.) (construing phrase "any motor vehicle registered or principally garaged in this state" in context of entire sentence to be "conjunctive rather than disjunctive, thereby requiring both elements to be satisfied for the statute to apply").

¶ 12. Notably, although the word "or" is most commonly used in its disjunctive sense, it is also "used after a negative verb to mean not one thing <u>and</u> also not another." Or, Cambridge Online Dictionary, https://dictionary.cambridge.org/us/dictionary/english/or [https://perma.cc/VT75-XKL9] (emphasis added). The dictionary provides the example: "The child never smiles or laughs." <u>Id</u>. The two conditions follow a verb made negative by its preceding adverb, and thus the "or" effectively becomes an "and": the child never smiles and never laughs.

¶ 13. Similarly, in this case, the conditions are contained in clauses that follow the negative adverb phrase, "no longer." Thus, expungement is available only when the underlying conduct is both no longer prohibited by law and no longer designated as a criminal offense. For the eighteen-month period in question, absconding from furlough was decriminalized but it was still prohibited by law, allowing the State to arrest and return to a correctional facility those who violated the law. See 2019, No. 77, ¶ 11. Hence, petitioner was not entitled to expungement.

¶ 14. Petitioner cites testimony in the Senate Judiciary Committee indicating that the bill adding § 7602(a)(1)(B) was aimed primarily at addressing minor drug possession that had been

6

decriminalized but was still subject to a civil fine. He also cites § 7602(e),[2] which specifically addresses petitions filed pursuant to § 7602(a)(1)(B) that seek expungement "for a conviction for possession of a regulated drug under 18 V.S.A. chapter 84, subchapter 1 in an amount that is no longer prohibited by law or for which criminal sanctions have been removed." According to petitioner, § 7602(e) is made superfluous under the State's interpretation of § 7602(a)(1)(B).

¶ 15.    Regarding petitioner's reference to comments made by committee members and witnesses at committee hearings considering the bill that added § 7602(a)(1)(B) in 2015, we have concluded that such comments are of little weight in determining legislative intent. See State v. Madison, 163 Vt. 360, 373-74, 658 A.2d 536, 545 (1995) (stating that comments made by individual legislators at committee hearings "are of little weight in determining legislative intent, unless they also exist in a written report that was available for review by the full legislature before passing the bill"); see also St. Amour v. Dep't of Soc. Welfare, 158 Vt. 77, 81, 605 A.2d 1340, 1342 (1992) (stating that, although not decisive, intent of Legislature as revealed by committee report is highly persuasive when statute is silent on disputed issue).[3] In any case, the comments petitioner relies upon merely suggest, as the dissent acknowledges, that the amendments to the expungement statute in 2015 were aimed, in large part, at making expungement available for decriminalized drug offenses—particularly possession of small amounts of marijuana—where the

---

[2] Section 7602(e) was originally enacted as § 7602(f) as part of Act 36 in 2015, at the same time the disputed § 7602(a)(1)(B) was added. 2015, No. 36, § 2.

[3] The dissent cites extensively to questions and comments made by committee members and legislative staff concerning the proposed bill that led to the Act amending § 7602. None of the comments are definitive as to what the committee members understood to be the meaning of the provisions in question. More importantly, those comments are not expressed in the committee's final report and are not helpful in determining what the full Legislature intended when it enacted the amendments to § 7602.

potential collateral consequences to the individuals convicted of such offenses substantially outweighed any harm to society.[4]

¶ 16.   Petitioner argues, however, that the State's conjunctive reading of § 7602(a)(1)(B) would render superfluous § 7602(e), which was also added to the expungement statute in 2015, because § 7602(e) plainly demonstrates that the Legislature intended § 7602(a)(1)(B) to apply to decriminalized but still unlawful possession of certain regulated drugs.  We disagree.

¶ 17.   Subsection 7602(e) addresses the burden of proof and a rebuttable presumption "[f]or petitions filed pursuant to subdivision (a)(1)(B) of this section for a conviction for possession of a regulated drug . . . in an amount that is <u>no longer prohibited by law or for which criminal sanctions have been removed</u>."  See 13 V.S.A. § 7602(e)(1)-(2) (emphasis added).  In contrast to § 7602(a)(1)(B), the negative adverb phrase "no longer" in § 7602(e) does not modify the second independent clause that follows the adverb and that has different language from the second clause in § 7602(a)(1)(B).  Thus, unlike § 7602(a)(1)(B), the word "or" separating the two phrases in § 7602(e) is used in its disjunctive sense.  With respect to requests for expungement of past convictions for now-decriminalized possession of regulated drugs, expungement is available when the conviction was based on possessing a regulated drug that <u>either</u> "is no longer prohibited by law <u>or</u> for which criminal sanctions have been removed."  13 V.S.A. § 7602(e) (emphasis added); see <u>State v. O'Keefe</u>, 2019 VT 14, ¶ 16, 209 Vt. 497, 208 A.3d 249 (stating that we give effect to specific provision over general provision in statutory scheme); <u>Judicial Watch, Inc. v. State</u>, 2005 VT 108, ¶ 8, 179 Vt. 214, 892 A.2d 191 ("It is axiomatic that in construing conflicting statutes that deal with the same subject matter, the more specific provision controls over the more general one." (quotation and alteration omitted)).

---

[4]   The Legislature had decriminalized possession of small amounts of marijuana in 2013. See 2013, No. 76, § 2.

¶ 18.  This makes sense, notwithstanding inconsistencies between the language in the two provisions discussed below.  The broader, more general provision, § 7602(a)(1)(B), generally requires satisfaction of both conditions set forth therein to obtain expungement—unless provided otherwise in more specific provisions set forth within the statute.  In § 7602(e), a more specific provision dealing with petitions for expungement of past convictions for now-decriminalized drug offenses, only one of the two conditions set forth therein need be satisfied to obtain expungement of convictions for now-decriminalized possession of regulated drugs.  Expungement is available for possessing certain regulated drugs in an amount that is either "no longer prohibited by law or for which criminal sanctions have been removed."  13 V.S.A. § 7602(e).  As noted, those minor drug convictions were based on conduct that generally caused little social harm compared to the potential negative consequences for those convicted and that was, at the time of Act 77, subject only to civil fines.  See 2013, No. 76, § 2 (imposing civil penalty for possession of less than one ounce of marijuana).

¶ 19.  Absconding from furlough is an entirely different matter, however.  That conduct can lead to other harmful consequences, as recognized by the fact that persons engaging in the conduct, even during the eighteen-month period when it was decriminalized, were subject to substantial penal sanctions involving loss of personal liberty—including warrantless arrest (referred to as return on mittimus) or arrest pursuant to the Commissioner's warrant and return to a correctional facility, with loss of good time.  See 28 V.S.A. § 808(d).

¶ 20.  We acknowledge that we are construing § 7602(a)(1)(B) to generally require that the subject offense is no longer criminalized <u>and</u> no longer illegal, while construing § 7602(e) to require that the offense in question be <u>either</u> no longer criminalized <u>or</u> unlawful—even though § 7602(e) refers to petitions filed pursuant to § 7602(a)(1)(B).  Again, we recognize that the language of the relevant provisions in § 7602 at issue in this appeal is far from a model of clarity.  But the critical language in the two key provisions is distinct, and the specific provision controls

over the general provision. Considering the statutory scheme in its entirety, including its subject matter, purpose, effects, and consequences, we conclude that a conjunctive reading of § 7602(a)(1)(B) best serves the legislative intent underlying the statute. See Toensing, 2019 VT 30, ¶ 7 (stating that when considering ambiguous statutory language, "we may infer intent from the statute's subject matter, purpose, effects, and consequences"). Accordingly, although generally expungement petitions filed under § 7602(a)(1)(B) require a showing that the offense in question is both no longer criminalized and no longer unlawful, petitions seeking expungement of offenses for possessing regulated drugs need show only that the offense has been either decriminalized or made lawful.

¶ 21. Given our interpretation of § 7602(a)(1)(B), we need not address the other two issues raised in this appeal, namely whether petitioner "ha[d] completed any sentence or supervision for" his absconding-from-furlough convictions, see 13 V.S.A. § 7602(d)(1), and whether petitioner demonstrated that he was entitled to expungement of those convictions in the "interests of justice," see id. § 7602(d).

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 22. **ROBINSON, J., dissenting.** I agree with the majority that, viewed in isolation, the provision authorizing an expungement request from a person who has been convicted of an offense "for which the underlying conduct is no longer prohibited by law or designated as a criminal offense" is ambiguous. 13 V.S.A. § 7602(a)(1)(B). As the majority acknowledges, if the Legislature intended to authorize expungement or sealing of criminal history records with respect to only those convictions for which the underlying conduct is no longer prohibited by law, even if

10

it has been decriminalized, the inclusion of "or designated as a criminal offense" would be superfluous. On the other hand, if the Legislature intended to authorize expungement of convictions for <u>all</u> conduct no longer designated as a crime, its inclusion of offenses for which the underlying conduct is "no longer prohibited by law" appears to add nothing.

¶ 23. But the tools of statutory construction uniformly compel the conclusion that § 7602(a)(1)(B) reaches convictions for conduct that is no longer a crime, regardless of whether it is unlawful in some other sense. First, focusing solely on the language of § 7602(a)(1)(B), there's a good explanation for the apparently superfluous language if the Legislature intended that subsection to reach all convictions for conduct that is no longer classified as criminal; by contrast, if the Legislature intended to limit the subsection's reach to conduct that is no longer prohibited by law, there is no plausible explanation for the words it used. Second, this interpretation is the only one that renders the statute coherent, considering other closely related provisions in the statute. And third, this understanding best promotes the goals of the expungement statute as evidenced by persuasive legislative history. Against these considerations, the majority's reasoning is not convincing.

¶ 24. The Legislature's apparently redundant inclusion of the descriptor "no longer prohibited by law" makes sense when you consider that sometimes the Legislature reclassifies conduct from a crime to a civil offense, and sometimes it simply legalizes conduct that it formerly treated as criminal. Compare 2013, No. 76, §§ 1-2 (reclassifying possession of one ounce or less of marijuana as a civil offense) with 2017, No. 86 (Adj. Sess.), § 4 (legalizing possession of one ounce or less of marijuana). Understood as a way of communicating that expungement is available whether the formerly criminal conduct has been decriminalized (while still subject to civil penalties) or completely legalized, the Legislature's choice of language makes sense. This kind of "belt-and-suspenders" approach to drafting statutes is not that unusual. See, e.g., <u>State v. Gauthier</u>, 2020 VT 66, ¶ 14, __ Vt. __, 238 A.3d 675 ("[G]iven the purpose of the law, it is substantially

more likely that the Legislature adopted a 'belt-and-suspenders' approach than that it left gaps in the reporting framework."); see also Atl. Richfield Co. v. Christian, 590 U.S. __, __, 140 S.Ct. 1335, 1350 n.5 (2020) (recognizing that "sometimes the better overall reading of the statute contains some redundancy" and concluding that it was "much more likely that Congress employed a belt and suspenders approach" in drafting the statute (quotation omitted)).  In short, there's a simple explanation for the Legislature's use of both phrases in § 7602(a)(1)(B) if the statute is understood to apply to formerly criminal conduct that has either been decriminalized or outright legalized.

¶ 25.  By contrast, if the Legislature intended that the only convictions subject to expungement are those for conduct that has been fully legalized, I cannot discern any reason why the Legislature would have added a reference to decriminalized offenses.  It wouldn't make any sense because if conduct is legalized, it is necessarily not criminal.  Given the straightforward explanation for the statutory language if we accept petitioner's construction, and the inexplicable inclusion of gratuitous statutory language if we accept the State's interpretation, the former best aligns with the language of § 7602(a)(1)(B) on its face.  As the United States Supreme Court has remarked in the context of interpreting a statute, "Often the simplest explanation is the best."  See Atl. Richfield Co., 590 U.S. at __, 140 S.Ct. at 1350.

¶ 26.  Moreover, this is the only interpretation that aligns with the statute as a whole.  See Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 ("In construing legislative intent, we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law." (quotation omitted)).  Subsection (a)(1) of § 7602 lists four categories of convictions eligible for expungement, including the category at issue here: offenses "for which the underlying conduct is no longer prohibited by law or designated as a criminal offense."  13 V.S.A. § 7602(a)(1)(B).  Subsection (e) of the statute applies a particular burden of proof and presumption to the subset of § 7602(a)(1)(B) cases in

12

which a person seeks expungement of a conviction for possession of a regulated drug "in an amount that is no longer prohibited by law or for which criminal sanctions have been removed." Given this slightly different wording, there can be no doubt that subsection (e) contemplates expungement of convictions for possession of regulated drugs in amounts that have been decriminalized but are still unlawful, as well as for amounts that are not prohibited by law at all. The majority acknowledges this. Ante, ¶ 17.

¶ 27.    Rather than reading the unambiguous language of § 7602(e) as resolving the ambiguity in § 7602(a)(1)(B), the majority suggests that the divergent wording is intentional and signifies a legislative intent to treat petitions to expunge convictions for possession of regulated drugs differently from petitions to expunge other kinds of convictions pursuant to § 7602(a)(1)(B). Ante, ¶¶ 17-18.   In particular, the majority concludes that the Legislature intended to authorize expungement of convictions for possession of regulated drugs in decriminalized but still-unlawful amounts, in deliberate contrast to the Legislature's limitation of expungements of other convictions to those arising from conduct that is no longer unlawful.

¶ 28.    In so reasoning, the majority ignores the structure and the language of the statute. Subsection (e) does not purport to establish an independent or expanded category of expungeable offenses; rather, it sets forth a special burden of proof and presumption for a subset of offenses that are subject to expungement pursuant to § 7602(a)(1)(B).  In particular, it provides:

> For petitions filed pursuant to subdivision (a)(1)(B) of this section for a conviction for possession of a regulated drug . . . in an amount that is no longer prohibited by law or for which criminal sanctions have been removed[, a specific burden of proof and rebuttable presumption apply concerning the amount of the regulated drug for which the person was convicted].

13 V.S.A. § 7602(e) (emphasis added).  Simply put, the path to § 7602(e) runs right through § 7602(a)(1)(B); by definition, § 7602(e) cannot authorize expungements for a broader class of convictions than § 7602(a)(1)(B).   Based on the unambiguous language of § 7602(e), if a conviction for conduct that has been decriminalized but not legalized cannot be expunged pursuant

13

to § 7602(a)(1)(B), then § 7602(e) does not come into play with respect to that conviction—regardless of whether it involves possession of regulated drugs—and the reference in § 7602(e) to convictions for possession of amounts "for which criminal sanctions have been removed" has no application. See Heffernan v. Harbeson, 2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149 ("In cases where there is doubt or ambiguity . . . we discern legislative intent by considering the statute as a whole, reading integral parts of the statutory scheme together.").

¶ 29. At the time § 7602(a)(1)(B) was enacted, possession of less than one ounce of marijuana by an adult over the age of twenty-one was a civil offense. See 2017, No. 86 (Adj. Sess.), § 4 (amending statute that made possession of one ounce or less of marijuana a civil offense to make such possession fully legal). Given the language and the structure of the statute, if the majority is right that § 7602(a)(1)(B) does not authorize expungement of convictions for conduct that has been decriminalized but is still a civil offense, then when it was enacted, the expungement statute would not have authorized expungement of convictions for possession of less than one ounce of marijuana. That most certainly was not the Legislature's intent. The driving force behind the 2015 amendment to the expungement statute was the Legislature's recent decriminalization of possession of small amounts of marijuana. Given that § 7602(e) only applies to a subset of convictions subject to expungement pursuant to § 7602(a)(1)(B), and given that on its face and in light of its historical context § 7602(e) clearly applies to conduct that has been decriminalized but not legalized, § 7602(a)(1)(B) necessarily applies to conduct that has been decriminalized but is still unlawful. To conclude otherwise, the majority essentially rewrites the statute by writing the introductory phrase "For petitions filed pursuant to subdivision (a)(1)(B) of this section" completely out of § 7602(e).

¶ 30. Finally, persuasive legislative history supports the above construction. Section 7602(a)(1)(B) was enacted in 2015. The bill, entitled "An act relating to expungement of convictions based on conduct that is no longer criminal," was first introduced in the Senate. See

14

S.115, 2015-2016 Gen. Assem., Bien. Sess. (Vt. 2015) [hereinafter S.115]. The statement of purpose of the bill as introduced was as follows: "This bill proposes to permit expungement of a criminal conviction within one year of the conviction if the conduct on which the conviction was based is no longer criminal." S.115 (as introduced by Senate, Feb. 25, 2015), https://legislature.vermont.gov/Documents/2016/Docs/BILLS/S-0115/S-0115%20As%20 Introduced.pdf [https://perma.cc/EK2J-MPHU]. As introduced, the relevant section of the bill would have authorized expungement pursuant to § 7602(a)(1)(B) if the person was convicted of:

> (I) an offense for which the underlying conduct is no longer prohibited by law or the criminal sanctions have been repealed; or

> (II) possession of a regulated drug . . . in an amount that is no longer prohibited by law or for which criminal sanctions have been repealed.

Id. § 2. The bill contained a separate subsection (e) establishing a special burden of proof and presumption "for petitions filed pursuant to subdivision (a)(1)(B)(i)(II)." Id. Pursuant to the bill as introduced, there could be no doubt that it sought to authorize expungement of any convictions for conduct that was subsequently either decriminalized (even if it remained unlawful) or fully legalized. The Senate did not change this language before passing the bill. See S.115 (as passed by Senate, Mar. 18, 2015), https://legislature.vermont.gov/Documents/2016/Docs/BILLS/S-0115/S-0115%20As%20Passed%20by%20the%20Senate%20Official.pdf [https://perma.cc/ G2UM-3P3S].

¶ 31. In the House, the bill was referred to the House Judiciary Committee, where, guided by Legislative Counsel, the committee walked section-by-section through S.115 as passed by the Senate. See Meeting Record of S.115 Walk-through with House Comm. on Judiciary, 2015-2016 Bien. Sess. (Vt. Mar. 24, 2015), https://legislature.vermont.gov/ committee/meeting-detail/2016/18/1397 [https://perma.cc/SBC8-ESZS] (meeting recording available through Vermont State Archives, CD 15-99). With respect to § 7602(a)(1)(B), Legislative Counsel explained that the bill expanded the pool of people who could petition for

expungement to include people whose underlying conviction is based on conduct that is no longer criminal, or based on possession of a regulated drug in an amount that is no longer considered criminal. Id. A committee member asked whether (B)(i)(II) addressed marijuana decriminalization, and Legislative Counsel confirmed that it did. Id. The member then asked what other decriminalized conduct the bill addressed pursuant to (B)(i)(I), and Legislative Counsel indicated that the Legislature had decriminalized some fish-and-game violations; she cited carrying a firearm during bow season as an example. Id. In the ensuing discussion, some members questioned why (B)(i)(II) was necessary, and whether it was encompassed within the more general language of (B)(i)(I). Id. Upon confirmation by Legislative Counsel that (B)(i)(I) would reach possession of marijuana in an amount less than one ounce, a member suggested that it might make sense to simply remove (B)(i)(II), and instructed Legislative Counsel to "bookmark" the issue. Id. Throughout the discussion, Legislative Counsel described the new category of expungeable offenses as those for conduct that had been "decriminalized."

¶ 32. Two days later, after the House Judiciary Committee had taken testimony from various stakeholders, the Committee voted to propose an amended version of S.115. The House itself ultimately agreed to the Judiciary Committee proposal of the amendment and passed the bill with the proposed amendments. See H. Jour. 1011, 2015-2016 Gen. Assem., Bien. Sess. (Vt. Apr. 10, 2015). As amended, the relevant section of the bill authorized expungement pursuant to § 7602(a)(1)(B) if "the person was convicted of an offense for which the underlying conduct is no longer prohibited by law or designated as a criminal offense." S.115, § 2 (as passed by House with proposal of amendment, Apr. 10, 2015), https://legislature.vermont.gov/Documents/2016/Docs /BILLS/S-0115/S-0115%20House%20Proposal%20of%20Amendment%20Official.pdf [https:// perma.cc/PD6S-CT8N]. In other words, as forecast in the original walk-through, the House consolidated the two subdivisions into a single, broad provision. It retained language providing for a special burden of proof and presumption as to the amount of a regulated drug in possession

16

in connection with "petitions filed pursuant to subdivision (a)(1)(B) of this section for a conviction for possession of a regulated drug . . . in an amount that is no longer prohibited by law or for which criminal sanctions have been removed." Id.

¶ 33. Because the Senate did not concur in the House proposal of amendment, the respective bodies appointed a conference committee. The "side-by-side" comparison of the House and Senate versions of the bill that was prepared by Legislative Counsel and presented to the House and Senate Conference Committee noted the respective chambers' different language in § 7602(a)(1) and explained the House amendment as follows: "House version distills (B)(i)(I) and (II) into (B) and omits (B)(i)(II) as encompassed within (B)." Legislative Counsel, 2015-2016 Gen. Assem., S.115 (expungement) – Comparison of House & Senate Versions (May 2015), https://legislature.vermont.gov/Documents/2016/WorkGroups/House%20Judiciary/Bills/S.115/C ommittee%20of%20Conference/S.115~Brynn%20Hare~Side-by-side%20Comparison%20of% 20House%20and%20Senate%20Versions~5-5-2015.pdf [https://perma.cc/AKE4-AT9F]. This explanation of the significance of the House amendment from Legislative Counsel who advised both House and Senate Judiciary Committees reinforces that the House amendment reflected a recognition that the category of convictions for possession of regulated drugs "in an amount that is no longer prohibited by law or for which criminal sanctions have been repealed" is a subset of the broader category of convictions "for which the underlying conduct is no longer prohibited by law or the criminal sanctions have been repealed," and that the two proposed subdivisions could be consolidated. The Conference Committee's final report, passed by both the House and Senate and enacted into law, left the House amendment of this subdivision intact. There is no hint in the legislative record of any intent to distinguish the universe of convictions based on possession of regulated drugs in an amount no longer criminalized and the more general universe of convictions for conduct no longer criminalized—other than with respect to the burden of proof and presumption set forth in § 7602(e). And the record refutes the suggestion that the revised language

17

in the consolidated provision—referencing "an offense for which the underlying conduct is no longer prohibited by law or designated as a criminal offense"—was intended to have any different meaning from the clearer initial wording—"an offense for which the underlying conduct is no longer prohibited by law or the criminal sanctions have been repealed."

¶ 34.    This legislative history reinforces what is apparent from the text itself—the drafting of § 7602(a)(1)(B) may be inelegant, but its purpose was to ensure that the expungement statute would reach both convictions for conduct that has been decriminalized, and convictions for conduct that has been legalized.  Significantly, this historical analysis does not rely on assertions by advocates or stakeholders in the context of their testimony before a legislative committee.  It is based on the neutral oral and written explanations presented to the House Judiciary Committee and the House and Senate Conference Committee by their counsel relating to the specific drafting question that now confounds this Court, and it offers direct evidence of the reason the House amended the original, and undisputedly clear, language of the original Senate bill.  See In re Dep't of Bldgs. & Gen. Servs., 2003 VT 92, ¶ 14, 176 Vt. 41, 838 A.2d 78 ("In relying upon legislative history . . . we must be cognizant of the quality of the evidence of legislative intent.").

¶ 35.    Against this compelling textual, structural, and historical evidence, the majority's reasoning is unpersuasive.  The upshot of the majority's grammatical deconstruction is that sometimes "or" can mean "and."  That may be correct.  But usually "or" means "or."  To determine which meaning applies in a given context, we have to take a broader look at the text, structure, and history of the statute, as set forth above.  Likewise, as noted above, the majority's attempt to reconcile the very clear language of § 7602(e) with its divergent construction of § 7602(a)(1)(B) doesn't jibe with the statutory structure and language that require that the universe of expungeable convictions described in the two subsections be the same.  Finally, the majority's emphasis on the social harms of absconding from furlough is misplaced.  Pursuant to the majority's reasoning, expungement is unavailable for the entire gamut of convictions based on conduct now

decriminalized but not legalized. For example, a past conviction for operating a motor vehicle with a suspended license after the suspension period expired and prior to the reinstatement of the license would not be expungeable because, even though that conduct is no longer a crime, it is still a civil violation. See State v. Flagg, 160 Vt. 141, 142, 624 A.2d 864, 865 (1993) (recognizing that new legislation reclassified defendant's offense of operating motor vehicle with suspended license after his suspension period had expired and prior to reinstatement of his license from criminal misdemeanor to a civil traffic violation by enacting amendment to 23 V.S.A § 674 and new section, § 676). The fact is, for a period of eighteen months, the Legislature viewed absconding as conduct unworthy of criminal penalties, even though it remained unlawful, much like possession of one ounce or less of marijuana from July 1, 2013, to July 1, 2018. See 2013, No. 76, § 13 (establishing effective date for relevant sections of Act); 2017, No. 86 (Adj. Sess.), § 18 (same).

¶ 36. For these reasons, I part ways with the majority's construction of the statute. I would remand for the trial court to determine whether "expungement of the criminal history record serves the interests of justice." 13 V.S.A. § 7602(b)(1)(D).[5]

_____
Associate Justice

---

[5] The State's suggestion that petitioner is ineligible for expungement because he has not "completed supervision" for the offenses he seeks to have expunged is unpersuasive. The State analogizes this circumstance to a petition for post-conviction relief, and argues that because petitioner is now being held without bail on account of this prior conviction, he has not "completed any sentence or supervision for the offense" as required by the expungement statute. 13 V.S.A. § 7602(d)(1). The analogy is misplaced. Whether someone has "completed any sentence or supervision" for an offense for purposes of the expungement statute is an entirely different question from whether the person is "in custody under sentence" for purposes of the post-conviction relief statute. Compare 13 V.S.A. § 7602(d)(1) with § 7131.

Likewise, petitioner's argument that this court should find as a matter of law that expungement of petitioner's criminal history would serve the interests of justice—a required finding for an expungement determination—is unpersuasive. This is a determination for the trial court to make in the first instance.